A. H. AND R. S. COAL CORPORATION
and Robert Snyder, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 75–94.

United States District Court,
W. D. Pennsylvania.

July 17, 1978.

John E. Wall, Pittsburgh, Pa., for plaintiffs.

Thomas A. Daley, Asst. U. S. Atty., Pittsburgh, Pa., Gregory S. Hrebiniak, Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant.

## OPINION

MARSH, District Judge.

Plaintiffs A. H. and R. S. Coal Corporation and Robert Snyder have instituted an action to quiet title, seeking divestment of a federal tax lien on personal property which they purchased. After a non-jury trial, the court makes the following findings of fact and conclusions of law.

The personal property purchased by plaintiffs had been subject to a security interest granted by a previous owner, American International Refining Corporation (hereinafter AIRC), in favor of RIDC Industrial Development Fund. RIDC had also held a mortgage on AIRC's real property in Butler County, Pennsylvania. On October 5, 1971, the United States filed notice in Butler County of a federal tax lien against all of AIRC's property and rights to property.

AIRC defaulted on the real property mortgage and on February 15, 1972, RIDC filed a "Complaint in Mortgage Foreclo-

sure." Because of the tax lien, the United States was joined with AIRC as a defendant, pursuant to 28 U.S.C. § 2410. On April 12, 1972, a judgment by default was entered against AIRC in the sum of $375,666.64.

A "Praecipe for Writ of Execution" was filed on July 19, 1974 by Attorney Donald Mazzotta on behalf of RIDC. By a letter dated July 24, 1974, Mazzotta notified the district director of the Internal Revenue Service that execution had been issued against AIRC and AIRC's real estate located in Butler County and that a sale of the property would take place on August 23, 1974. The letter stated that a full description of the property to be sold was attached to the notice. Appended to the notice was a complete description of the real property. A "Notice of the Filing of Writ of Execution" was received by the United States Attorney for the Western District of Pennsylvania no later than July 26, 1974 and by the United States Attorney General on July 29, 1974. The United States did not respond to either the letter or the notice.

AIRC had also defaulted on its security agreement with RIDC pertaining to personal property owned by AIRC. On July 30, 1974, Mazzotta wrote a letter to the Sheriff of Butler County instructing him to seize, levy upon, advertise and sell the personal property. The letter directed that the sale be held on August 23, 1974, the same date as had been fixed for the sale of the real estate. On July 31, 1974, the sheriff levied on the personal property. A notice of the sheriff's sale of the personal property was posted on August 9, 1974 in the sheriff's office and Jasper L. Deener, an Internal Revenue Service revenue officer stationed in Butler County, saw the notice. A separate notice was posted advertising the real property sale.

On the morning of August 23, 1974, plaintiff Robert Snyder, president of A. H. and R. S. Coal Corporation, and John Wall, Esquire, counsel for A. H. and R. S. Coal Corporation met with Deener at the Internal Revenue Service office. Deener told them that he had received no notice of the sale of the personal property. Later that day, Deener attended the personal property sale but took no part in it. He voiced no objections to the sale and did not mention the tax lien.

At the sale, the personal property was sold for costs of $19.25 to Attorney Mazzotta, who purchased the property on behalf of RIDC. After he had purchased the personal property and before the sheriff auctioned the real property, Mazzotta told bidders that the personal property would go to whomever bought AIRC's real property. Plaintiff A. H. and R. S. Coal Corporation purchased the real property for about $180,000.

On or about October 1, 1974, RIDC transferred the personal property to A. H. and R. S. for a nominal amount. Subsequently, the property was seized by the Internal Revenue Service because of the tax lien. In accord with an agreement reached by the plaintiffs and the United States, the amount of $17,000 was placed in an escrow account and the property was released to the plaintiffs. The $17,000 is to be awarded to the prevailing party in this lawsuit.

The issue is whether the procedure outlined above discharged the federal tax lien against the personal property. We find that the tax lien was not discharged.

■ A tax lien of the United States may be divested under local law only in the manner prescribed by 28 U.S.C. § 2410 or 26 U.S.C. § 7425. Section 2410 applies when the United States is named as a party in a civil action to quiet title or to foreclose a mortgage or other lien. When the United States is not joined as a party, § 7425 applies.

■ Plaintiffs argue that § 2410 controls the instant case since the United States was joined as a party in the mortgage foreclosure action brought by RIDC against AIRC. It is our opinion that the mortgage foreclosure was distinct from the repossession and sale of AIRC's personalty; the personal property sale resulted from the foreclosure of a separate security interest. Accordingly, the United States was not a party to the action concerning the sale of AIRC's personal property.

The determination of whether the federal tax lien was divested therefore must be based on § 7425. Section 7425(a) details the requirements to discharge a lien through a judicial sale while § 7425(b) applies to "other sales," which are referred to as non-judicial sales. Thus, it first must be decided how we should characterize the sale involving AIRC's personal property.

██ "What may accurately be denominated as a judicial sale is not very well settled" but a judicial sale must have certain basic ingredients. *City of New Castle v. Whaley's Heirs*, 102 Pa.Super. 492, 496, 157 A. 503, 504 (1931). A judicial sale is distinct from an execution sale which may "issue by mere praecipe of the judgment creditor." *Yazoo & M. V. R. R. Co. v. City of Clarksdale*, 257 U.S. 10, 42 S.Ct. 27, 66 L.Ed. 104 (1921); *United States v. Branch Coal Corp.*, 390 F.2d 7, 9–10 (3d Cir. 1968). To be classified as a judicial sale, the sale "must be based upon an order, decree or judgment *directing* sale." *Baton Coal Co. Appeal*, 365 Pa. 519, 523, 76 A.2d 194, 196 (1950).

██ The sale of AIRC's personalty did not emanate from a judgment. Nor was it authorized by the mortgage foreclosure default judgment. A mortgage foreclosure is a judgment against the land and it

> "imposes no personal liability upon the mortgagors against whom the judgment is obtained. . . . The sole purpose of the judgment obtained through an action of mortgage foreclosure is to effect a judicial sale of mortgaged property. Once the foreclosure sale has taken place, the purpose of the judgment has been fulfilled and is rendered *functus officio*."

*Meco Realty Co. v. Burns*, 414 Pa. 495, 498, 200 A.2d 869, 871 (1964). Since the personal property was not sold pursuant to a judicial decree, its sale should be classified as a non-judicial sale.[1]

Under § 7425(b) a non-judicial sale divests property of a federal tax lien only if: (1) The United States failed to file record notice of the lien 30 days before the sale; or (2) the United States consents that the sale discharges the lien; or (3) the creditor complies with notice provisions prescribed by § 7425(c) and the regulations promulgated thereunder.

It is clear that the United States filed proper record notice of the lien and that the government did not consent to the sale. The parties disagree about whether proper notice was given.

The notice requirements are outlined in § 7425(c):

> "(1) Notice of Sale.—Notice of a sale to which subsection (b) applies shall be given (in accordance with regulations prescribed by the Secretary or his delegate) in writing, by registered or certified mail or by personal service, not less than 25 days prior to such sale, to the Secretary or his delegate."

The Regulations direct that the notice should be given to the district director for the revenue district in which the sale is to be conducted and that the notice is not effective if given to another district director. The Regulations also provide that the notice of sale must contain certain information specifying the property to be sold, including:

> "(a) A detailed description, including location, of the property affected by the notice (in the case of real property, the street address, city, and State and the legal description contained in the title or deed to the property . . .);"

26 C.F.R. § 400.4–1(f)(1)(iii).

If the district director receives "inadequate notice" the Regulations require that

---

1. The mere involvement of the sheriff is not enough to require that the sale be labeled a judicial sale within the meaning of § 7425(a). See *National Central Bank v. United States*, 40 A.F.T.R.2d 77–5471 (M.D.Pa. June 8, 1977) (P–H); *Baum v. United States*, 74–1 U.S. Tax Cases (CCH) 9415 (S.D.N.Y. April 24, 1974); 26 C.F.R. § 400.4–1(a)(2) *Example* (1).

It is inconsequential that the real estate and personalty sales were held contemporaneously and that the purchaser of the personal property, Attorney Mazzotta, stated that the personalty would go to whomever bought the real property. The crucial inquiry is whether the personal property was sold pursuant to a judicial decree.

he "give written notification of the items of information which are inadequate to the person who submitted the notice." *Id.* at § 400.4–1(f)(2). The Regulations also state:

"In any case in which the person who submitted a timely notice does not receive, more than 5 days prior to the date of the sale, written notification from the district director that the notice is inadequate, the notice shall be considered adequate for the purposes of this section."

*Id.*

On July 24, 1974, RIDC's attorneys, Davis & Mazzotta, sent a letter to the district director stating that execution had been issued against AIRC and that the property which would be sold was described in an attachment to the notice.[2] The only property described was real property. Since neither the notice nor the enclosed description specified any other property, the documents afforded the Internal Revenue Service no notice that personalty would be sold August 23, 1974.

Plaintiffs argue that the Internal Revenue Service received adequate notice as soon as Deener saw the posted notice announcing the personalty sale.

We do not agree. This actual notice did not comply with the 25-day requirement of § 7425(c).[3] Moreover, such actual notice of a foreclosure sale does not comply with the other requirements of § 7425(c) and the statute allows for no alternative to the prescribed notice. *National Central Bank v. U. S.*, 40 A.F.T.R. (P–H) 5471 (M.D.Pa. June 8, 1977); *Baum v. United States*, 74–1 U.S. Tax Cases (CCH) 9415 (S.D.N.Y. April 24, 1974), *aff'd*, 535 F.2d 1240 (2d Cir. 1975); *Puls v. United States*, 387 F.Supp. 760, 763 (N.D.Cal.1974).

"[T]he procedure dictated by the statute must be strictly followed to ensure" the government's priority against judgment creditors. *United States v. Ruby Luggage Corp.*, 142 F.Supp. 701, 702 (S.D.N.Y.1954).

Alternatively, plaintiffs assert that after Deener viewed the notice a statutory or equitable obligation was imposed on the Internal Revenue Service to notify AIRC that it had received inadequate notice of the sale of personal property. This argument is without merit. The statutory notice which the Internal Revenue Service received appeared adequate on its face. It seemed to be a complete notification that a real estate mortgage foreclosure sale would be held. Thus, upon receipt of the notice, the Internal Revenue Service had no reason to notify AIRC that the notice was inadequate.

Nor did the Internal Revenue Service have any duty to investigate to see if something other than the property described in the notice would be sold. When Deener in fact learned that a personal property sale would also be held, the Internal Revenue Service was not required to notify RIDC that their previous notice did not mention the personal property. The obligation to inform a party of inadequate notice is triggered only when the taxpayer originally provided timely notice and the notice itself is inadequate. *See Puls v. United States*, 387 F.Supp. at 763. No such obligation is created simply because a revenue officer has actual notice of a sale of which the Internal Revenue Service has not received written notice. Written notice of a real property sale and actual notice of a personalty sale cannot be bootstrapped into being an effective notice of the personal property sale. *See id.* at 763.

Plaintiffs assert that in any event they should prevail on a theory of equitable estoppel. They claim that even though Deener informed the prospective purchasers that

---

2. The letter stated:

"You are hereby notified . . . that execution has been issued at Butler County Court of Common Pleas, Civil Division, Execution Docket No. E.D. 86, 1974, Book 11, Page 463, against the above named defendant, American International Refining Corporation, and real estate located in the Borough of Bruin, Butler County, Pennsylvania. A full description of the property is attached to this notice. Sale is scheduled for Friday, August 23, 1974 at 2 p. m. in the Butler County Court House, Butler, Pennsylvania."

3. Deener saw the notice on August 9, 1974, only 14 days before the August 23, 1974 sale.

the Internal Revenue Service had no notice of the sale, he should have informed their counsel of the consequences, and he should have announced at the sale that the tax lien would continue to exist. When Deener did not do so, plaintiffs argue, he tacitly misrepresented that the sale would extinguish the lien.

Deener, who had no authority to explain the consequences of failing to notify the Internal Revenue Service, acted in good faith and made no intentional misrepresentations. Even if his silence could be interpreted as a representation that the sale would extinguish the lien, equitable estoppel would not attach since such a representation would be an erroneous conclusion of law. Equitable estoppel generally does not apply in tax cases involving government representations concerning questions of law, *Automobile Club of Michigan v. Commissioner*, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957), "even where a taxpayer may have relied to his detriment on the . . . mistake." *See Dixon v. United States*, 381 U.S. 68, 72, 85 S.Ct. 1301, 1304, 14 L.Ed.2d 223 (1975). "[T]he United States does not lose its revenue because of the erroneous ruling of an administrative official." *Martin's Auto Trimming, Inc. v. Riddell*, 283 F.2d 503, 506 (9th Cir. 1960).

Plaintiffs also argue that the "Notice of Filing of Writ of Execution" which they sent to the United States Attorney for the Western District of Pennsylvania and the Attorney General of the United States constituted a proper § 7425(c) notice. It did not. The notice was not sent to the district director and therefore has no effect under the statute. Furthermore, the notice provided no notice that AIRC's personal property would be subject to execution. A notice of July 24, 1974 cannot be construed as providing the government with notice of the sale of property which the sheriff was not instructed to seize until July 30, 1974 and which he did not levy upon until a day later. Moreover, the only property described by the Writ of Execution itself is "realty."

Plaintiffs also claim that § 7425 does not apply since the foreclosure of the security interest on the personal property was a non-sale disposition. Plaintiffs rely on *Runkel v. United States*, 527 F.2d 914 (9th Cir. 1975) for support. In that case, the purchaser of a house defaulted and the seller exercised a provision in the security agreement whereby the purchaser forfeited any interest in the house. Under the security agreement, legal title was to remain in the sellers until payment was completed. The court held that the default proceedings did not fall within § 7425 since the property was returned automatically to its original owner and there was never any sale or passage of title.

Our case is distinguishable since, unlike in *Runkel*, the repossession culminated in a sale of the property. Such a repossession cannot properly be labeled a non-sale disposition. Section 7425(b) was designed to assure that non-judicial foreclosure sales of which the government does not have proper notice do not affect the government's claim under a tax lien. *See Puls v. United States*, 387 F.Supp. at 763; *See* U.S.Code Cong. & Admin.News, 89th Cong. 2d Sess. Vol. 3, pp. 3722, 3749 (1966). If we were to adopt plaintiffs' theory, no foreclosure wherein the property was repossessed by the secured party, then sold, would be subject to the act. Surely this is not what Congress intended.

Since we find that the United States was not a party to the personal property foreclosure, and that § 7425 was not complied with, we hold that the federal tax lien was not divested and that judgment must be entered for the defendant.

An appropriate order will be entered.