Thomas Jerry MYERS, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 80–3245.

United States Court of Appeals, Fifth Circuit.

Unit A

June 12, 1981.

David M. Touchstone, Shreveport, La., for plaintiff-appellant.

M. Carr Ferguson, Asst. Atty. Gen., Michael L. Paup, William S. Estabrook, John A. Dudeck, Jr., Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before BROWN and TATE, Circuit Judges, and SMITH *, District Judge.

TATE, Circuit Judge:

Property owner Thomas Jerry Myers brings this appeal from a judgment of the district court that upheld the validity of an Internal Revenue Service levy made pursuant to the provisions of the Federal Tax Lien Act of 1966, 26 U.S.C. §§ 6323 et seq. The property in question had been foreclosed upon and sold, and the federal tax liens cancelled, pursuant to Louisiana's executory foreclosure proceedings. The plaintiff-appellant Myers acquired the property through a private transaction from the pur-

* District Judge of the Northern District of Mississippi, sitting by designation.

chaser at that foreclosure sale. We agree with the district court that the foreclosure sale did not discharge the tax liens, because the executory foreclosure constituted an "other sale" within the meaning of 26 U.S.C. § 7425(b), so that therefore the foreclosing creditor's failure to serve notice upon the United States as required by that section prevented the discharge of the federal liens through the foreclosure sale. Furthermore, we hold that the levy procedures established by the Act, 26 U.S.C. § 6331, do not violate the due process clause of the Fifth Amendment.

The judgment below is therefore affirmed.

### Facts

The facts of this case are largely undisputed.

On April 21, 1978, Peoples Bank & Trust of Blanchard, Inc. (Peoples Bank) instituted foreclosure proceedings via Louisiana's executory process[1] against certain immovable property located in Caddo Parish, Louisiana, and owned by Fitts & Associates, Inc. (Fitts).

At the time the foreclosure proceedings were commenced, the Peoples Bank mortgage was the senior encumbrance on the property. Among the several inferior encumbrances was a duly recorded federal tax lien against Fitts in the amount of $17,754.18 that had been filed for recordation in Caddo Parish on April 5, 1978. Pursuant to the foreclosure proceedings, the property was seized and a notice of seizure was recorded on April 24, 1978.

On April 25, 1978, four days after the foreclosure proceedings were commenced, a second federal tax lien against Fitts, this one in the amount of $15,809.33, was duly recorded as an encumbrance on the property. (The plaintiff Myers' first contention

on this appeal is that this second lien, recorded *after* the foreclosure proceedings were filed, was discharged by the foreclosure sale. The district court rejected this contention, holding that the lien was not discharged because notice of the foreclosure proceedings was not served upon the government.)

On June 7, 1978, more than forty days after the filing of the second federal tax lien, a sheriff's sale was held. The property sold to Peoples Bank for $170,000.00—less than the amount of the debt secured by the Peoples Bank mortgage. In accordance with state law, as instructed by the sheriff, the Caddo Parish clerk of court therefore noted in the public records the cancellation of all inferior encumbrances on the property, including the two federal tax liens.

At no time during the foreclosure proceedings was the United States joined as a party or served with notice of the sale.

Subsequently, on June 16, 1978, Peoples Bank sold the property to appellant Myers, whose title examination had disclosed that all encumbrances on the property (including the federal tax liens) had been discharged.

On June 21, 1978, after Myers' purchase and the recordation of his deed, the government served Fitts with a levy against the property, and served Myers with a notice of seizure. Notices of seizure were posted on the property, and the property was secured. (Myers' second complaint, based on the Fifth Amendment, is that no predeprivation hearing was held before he was dispossessed of his property and that no meaningful postdeprivation hearing was afforded him to contest the validity of the tax claim against Fitts, the tax debtor and prior owner of the property.)

On July 5, 1978, Myers brought this action for wrongful levy[2] in the United States District Court for the Western Dis-

---

1.  La.C.Civ.P. arts. 2631 et seq.

2.  *See* 26 U.S.C. § 7426(a)(1), which provides, in pertinent part:
    If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States.

trict of Louisiana. The district court ordered the property released from seizure after requiring Myers to deposit the amount of the tax assessment (with interest) secured by the two tax liens into the registry of the court.

After trial on the merits, the district court concluded that Louisiana's executory process is *not* a "judicial proceeding" within the meaning of the Act's discharge provisions, *see* 26 U.S.C. § 7425(a), and that the foreclosing creditor (Peoples Bank) was therefore required to serve notice upon the government, as provided by 26 U.S.C. § 7425(b), in order to discharge the federal tax liens through the foreclosure sale. Since such notice was not given in this case, the district court held that the liens had not been discharged, and that the government had properly levied upon and seized the property.

On appeal, Myers contends (I) that the district court erred in concluding that the

second federal tax lien, filed for recordation after the commencement of the executory foreclosure proceedings, was not discharged by virtue of the foreclosure sale, and (II) that the levy procedures established by the Act are unconstitutional in that they violate the due process clause of the Fifth Amendment.[3]

## I

The resolution of Myers' first contention—that the foreclosure sale effectively discharged the second federal tax lien—turns on the proper characterization of the foreclosure sale under the discharge provisions of the Act.

### A.

The methods by which an inferior tax lien of the United States may be discharged through foreclosure and sale under local law are set out in 28 U.S.C. § 2410 and 26 U.S.C. § 7425.[4] *See* Mertens, Federal Income Taxation: Code Commentary

---

**3.** Although briefed and argued at some length below, the constitutional issue was not discussed by the district court in its opinion.

**4.** 28 U.S.C. § 2410 provides, in pertinent part:
   (a) Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States, the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter—
   (1) to quiet title to,
   (2) to foreclose a mortgage or other lien upon,
   (3) to partition,
   (4) to condemn, or
   (5) of interpleader or in the nature of interpleader with respect to,
   real or personal property on which the United States has or claims a mortgage or other lien.
      . . . .
   (c) A judgment or decree in such action or suit shall have the same effect respecting the discharge of the property from the mortgage or other lien held by the United States as may be provided with respect to such matters by the local law of the place where the court is situated. However, an action to foreclose a mortgage or other lien, naming the United States as a party under this section, must seek judicial sale.
   26 U.S.C. § 7425 provides, in pertinent part:
   (a) Judicial proceedings.—If the United States is not joined as a party, a judgment in

any civil action or suit described in subsection (a) of section 2410 of title 28 of the United States Code, or a judicial sale pursuant to such a judgment, with respect to property on which the United States has or claims a lien under the provisions of this title—
   (1) shall be made subject to and without disturbing the lien of the United States, if notice of such lien has been filed in the place provided by law for such filing at the time such action or suit is commenced, or
   (2) shall have the same effect with respect to the discharge or divestment of such lien of the United States as may be provided with respect to such matters by the local law of the place where such property is situated, if no notice of such lien has been filed in the place provided by law for such filing at the time such action or suit is commenced or if the law makes no provision for such filing.
   If a judicial sale of property pursuant to a judgment in any civil action or suit to which the United States is not a party discharges a lien of the United States arising under the provisions of this title, the United States may claim, with the same priority as its lien had against the property sold, the proceeds (exclusive of costs) of such sale at any time before the distribution of such proceeds is ordered.
   (b) Other sales.—Notwithstanding subsection (a) a sale of property on which the United States has or claims a lien, or a title derived from enforcement of a lien, under the

§ 7425:1 (1980). When the United States is not joined as a party to the foreclosure proceedings, the statutory scheme embodied in those sections draws a distinction between sales pursuant to "judicial proceedings," the effect of which is governed by 26 U.S.C. § 7425(a),[5] and "other sales," the effect of which is governed by 26 U.S.C. § 7425(b).[6] *See generally* Mertens, Code Commentary, *supra*, § 7425:1–:2. The distinction is made by 26 U.S.C. § 7425, enacted by the Federal Tax Lien Act of 1966, which was intended to protect the United States, where its tax lien is junior, from its discharge under state law without prior notice to the United States of proceedings by which the property is sold. *Id.*

■ For present purposes, the relevance of the distinction is that, if the Louisiana executory foreclosure is a "judicial proceeding," the second federal tax lien was discharged, because it was not filed at the time the foreclosure process was commenced.[7] However, if the Louisiana executory foreclosure was an "other sale," the second federal lien (filed more than thirty days before the date of the sale) is not discharged, because the federal government was not afforded notice of the sale as required by statute.[8] Although under state law the inferior mortgages and liens were discharged by the foreclosure sale, it is not disputed that, if the proper type of notice required by federal statute is not afforded where so required, the federal tax lien then remains unaffected by the foreclosure process and will follow the property into the hands of the subsequent purchaser, even

provisions of this title, made pursuant to an instrument creating a lien on such property, pursuant to a confession of judgment on the obligation secured by such an instrument, or pursuant to a nonjudicial sale under a statutory lien on such property—

(1) shall, except as otherwise provided, be made subject to and without disturbing such lien or title, if notice of such lien was filed or such title recorded in the place provided by law for such filing or recording more than 30 days before such sale and the United States is not given notice of such sale in the manner prescribed in subsection (c)(1); or

(2) shall have the same effect with respect to the discharge or divestment of such lien or such title of the United States, as may be provided with respect to such matters by the local law of the place where such property is situated, if—

(A) notice of such lien or such title was not filed or recorded in the place provided by law for such filing more than 30 days before such sale,

(B) the law makes no provision for such filing, or

(C) notice of such sale is given in the manner prescribed in subsection (c)(1).

(c) Special rules.—

(1) Notice of sale.—Notice of a sale to which subsection (b) applies shall be given (in accordance with regulations prescribed by the Secretary or his delegate) in writing, by registered or certified mail or by personal service, not less than 25 days prior to such sale, to the Secretary or his delegate.

5. *See A.H. and R.S. Coal Corp. v. United States,* 461 F.Supp. 752, 754–55 (W.D.Pa.1978);

Galesi v. United States, 406 F.Supp. 623, 625–26 (D.Vt.), aff'd, 544 F.2d 606 (2d Cir. 1976).

6. *See A.H. and R.S. Coal Corp. v. United States, supra,* 461 F.Supp. at 755; *Galesi v. United States, supra,* 406 F.Supp. at 626.

7. Foreclosure and sale pursuant to "judicial proceedings" will discharge an inferior federal tax lien if, and only if: (1) The United States is named as a party to the judicial foreclosure proceedings, 28 U.S.C. § 2410(a), (c); (2) the federal tax lien is not filed in accordance with the provisions of local law at the time the judicial foreclosure proceedings are commenced, 26 U.S.C. § 7425(a)(2); or (3) the law makes no provision for the filing of such liens, 26 U.S.C. § 7425(a)(2). *See* Mertens, Code Commentary, *supra,* § 7425.1.

8. With regard to "other sales," the statutory scheme provides that a sale pursuant to an instrument creating a lien, a confession of judgment on the obligation secured by an instrument creating a lien, or a nonjudicial sale under a statutory lien, *see* 26 U.S.C. § 7425(b), will discharge an inferior federal tax lien according to the provisions of local law if, and only if: (1) The federal tax lien is not duly filed in accordance with the provisions of local law more than thirty days prior to the date of the sale, 26 U.S.C. § 7425(b)(1), (b)(2)(A); (2) the law makes no provision for such filing, 26 U.S.C. § 7425(b)(2)(B); or (3) the foreclosing creditor serves written notice of the sale, as described in 26 U.S.C. § 7425(c)(1), upon the United States at least twenty-five days prior to the date of the sale, 26 U.S.C. § 7425(b)(1), (b)(2)(C). *See* Mertens, Code Commentary, *supra,* § 7425:2.

though (due to improvident cancellation) that purchaser had no record notice of the lien.

### B.

■ In the present case, the foreclosure sale was held pursuant to Louisiana's executory process. Executory process is an expedited *in rem* action derived from the civil law. *Hood Motor Company, Inc. v. Lawrence*, 320 So.2d 111, 112–13 (La.1975). *See generally* McMahon, *The Historical Development of Executory Process in Louisiana*, 32 Tul.L.Rev. 555 (1958). By means of the executory process, a creditor may effect the seizure and sale of property in an *ex parte* proceeding, without previous citation and judgment, in order to enforce a mortgage or privilege that is evidenced by an authentic act[9] importing a confession of judgment.[10] La.C.Civ.P. art. 2631.

■ In order to obtain the *ex parte* order of seizure and sale, the creditor must file a petition that comports with the general pleading requirements of Louisiana law, La. C.Civ.P. arts. 2634, 891, and must attach thereto the authentic evidence necessary to prove his right to use executory process— the instruments evidencing the obligation, the authentic act of mortgage or privilege importing the confession of judgment, and any other evidence necessary to complete the proof of his right to use executory process, La.C.Civ.P. art. 2635; *Hood Motor Company, Inc. v. Lawrence, supra,* 320 So.2d at 113. However, the order may be issued by a judge, or by the clerk of court in the exercise of his quasi-judicial powers, La.C.Civ.P. art. 283(2); *Hood Motor Company, Inc. v. Lawrence, supra,* 320 So.2d at 114–16, 115 n. 4, and is not considered a judgment "in any technical sense," *Hood Motor Company, Inc. v. Lawrence, supra,* 320 So.2d at 113 n.3.

The Louisiana executory proceeding, founded upon "authentic" (sworn, pre-suit) evidence, is designed to be an expeditious, effective, and inexpensive foreclosure proceeding. McMahon, *supra,* 32 Tul.L.Rev. at 532. Once the order has issued and the property has been seized, the debtor may contest the seizure only by taking a suspensive appeal or by instituting an injunction proceeding to arrest the seizure and sale. La.C.Civ.P. art. 2642. This *in rem* action may be instituted against survivors of a deceased original debtor without the necessity of probate proceedings, La.C.Civ.P. arts. 2671, 2672, as well as to enforce the mortgage against property sold by the original debtor, *without* joining the subsequent purchaser as a party, La.C.Civ.P. art. 2701.

### C.

Under the facts of the case at hand, the issue to be resolved is relatively narrow: Whether Louisiana's executory process constitutes a "judicial proceeding" as that term is used in 26 U.S.C. § 7425.

■ The United States was not joined as a party to the foreclosure proceedings nor served with written notice of the foreclosure sale. It is undisputed that *both* federal tax liens were duly filed more than thirty days prior to the date of the foreclosure sale, and that the *first* federal lien was filed prior to the commencement of the executory foreclosure proceedings. Thus, whether or not the executory foreclosure is a "judicial proceeding" or an "other sale," it is clear (and Myers concedes) that the *first* federal lien cannot have been discharged by virtue of the foreclosure sale. The *second* federal tax lien, however, was not filed at the time the executory foreclosure proceedings were commenced. Therefore, if the foreclosure sale can be characterized as a sale pursuant to "judicial proceedings" as that term is used in § 7425(a), the second lien would be discharged as provided in

---

**9.** An authentic act is one executed before a notary public in the presence of two witnesses. La.Civ.C. art. 2234.

**10.** An act evidencing a mortgage or privilege imports a confession of judgment when the obligor acknowledges the obligation secured by the act and confesses judgment thereon, whether before or after maturity. La.C.Civ.P. art. 2632; *Hood Motor Company, Inc. v. Lawrence,* 320 So.2d 111, 113 n.2 (La.1975).

§ 7425(a)(2). If, however, the foreclosure sale is an "other sale" within the meaning of § 7425(b), then the second federal lien would not be discharged, because the United States was not given notice of the proceeding. 26 U.S.C. § 7425(b)(1), (b)(2)(C).

■ For reasons to be set forth, the district court correctly held that Louisiana's executory process does not constitute a "judicial proceeding" within the meaning of § 7425(a), and that the foreclosure sale at issue here is thus an "other sale" governed by the provisions of § 7425(b).

By its terms, § 7425(a) applies only to "judicial sales" pursuant to "a judgment in any civil action or suit described in subsection (a) of title 28 of the United States Code." 26 U.S.C. § 7425(a). Section 7425(b), on the other hand, applies to all "other sales":

> Notwithstanding subsection (a) a sale of property ... made pursuant to an instrument creating a lien ..., *pursuant to a confession of judgment on the obligation secured by such an instrument*, or pursuant to a nonjudicial sale under a statutory lien....

26 U.S.C. § 7425(b) (emphasis added).

The precise contours of the distinction thus drawn between "judicial" and "other" sales are brought into clearer focus by the legislative history. The congressional committee reports explaining § 7425 differentiate the "judicial proceedings" of its subsection (a) from the "other sales" of subsection (b) as follows: the former is "a plenary judicial proceeding," as contrasted with "other foreclosure proceedings" "where the interests of junior lienors may be eliminated without notice"; as an example of the latter, the report speaks of the procedure available in some states whereby "foreclosure of a senior security interest may be accomplished by sale of the property by a judicial officer pursuant to a judgment entered under a 'confession of judgment' signed by the debtor (typically in the security interest instrument itself)."[11] The re-

---

11. In its report on the Federal Tax Lien Act of 1966, the House Ways and Means Committee offered the following explanation of § 7425:

> Under present law, a junior Federal tax lien may be discharged on foreclosure of a senior security interest. Such foreclosure may occur in a *plenary judicial action*, or, under the law of some States, by nonjudicial foreclosure pursuant to a power of sale contained in the senior security instrument. *In addition, in some States, foreclosure of a senior security interest may be accomplished by sale of the property by a judicial officer pursuant to a judgment entered under a "confession of judgment" signed by the debtor (typically in the security interest instrument itself)*. Where State law so provides, a junior Federal tax lien may be extinguished without the United States either being made a party to the proceeding or having any actual notice. As a result, under current law tax liens are sometimes extinguished without the United States having actual notice of the proceedings, under circumstances where it is not possible for the Internal Revenue Service to take steps to protect the United States in the collection of its tax revenues.
>
> Where there is a *plenary judicial proceeding* and the Government, as a junior lienor, must be joined for its interests to be discharged in the proceeding, the present procedure works well. However, *in other cases* where the interests of junior lienors may be eliminated without notice, it appears that the interest of the Government are not presently sufficiently protected. *Although legitimate local considerations may preclude requiring the Government (in other than plenary proceeding) to be joined as a party for its interest under a tax lien to be discharged, there does not appear to be any reason why in these cases there should not be a timely notice of the proceedings to the Government* where notice of its tax lien is on file. The requirement of notice gives the Government an opportunity to review its position and determine the appropriate action without placing an undue burden on a foreclosing creditor.
>
> As explained below, the bill adds a new provision to the internal revenue laws *requiring the Government to be made a party in a plenary proceeding to discharge a tax lien.* The bill also makes provision for a *timely notice to the Government where it has the status of a junior lienor and there is no plenary proceeding.*
>
> (1) Plenary foreclosure actions (sec. 7425(a) of the code)
>
> The bill provides that *in a plenary judicial proceeding* where the Government has properly filed notice of a tax lien before the proceedings commence, but the Government is not joined as a party in the court proceeding, a judgment as to the property is not to disturb a tax lien or claim of a tax lien of the Government on this property. The same re-

port notes the intent of § 7425 to require that the government be made a party in a plenary proceeding to discharge its tax lien, and—where there is no plenary proceeding—to require timely notice to the government where it has the status of a junior lienor.

■ The import of the legislative history is quite clear: Section 7425(a) was intended to apply only to judicial sales pursuant to *plenary* judicial proceedings embodying the procedures associated with a complete and formal hearing on the merits, as distinguished from a more informal summary determination. *See* Black's Law Dictionary, *verba* "plenary" and "plenary action" (5th ed. 1979). Louisiana's executory process is unquestionably a "judicial proceeding" in the literal sense—it does require judicial, or at least quasi-judicial, involvement; but it falls far short of the *plenary* judicial proceedings described in the committee reports. This conclusion is bolstered by the express language of § 7425(b), which in terms applies to sales made "pursuant to a confession of judgment," as well as by the language of the congressional report (see note 11) that specifically equates the present type of "confession of judgment"

foreclosure with "other" (*i. e., non* plenary) proceedings.

Myers argues, however, that the Act's legislative history, when taken as a whole, does not reflect the plenary-nonplenary distinction made in the above-quoted committee reports. In support of this contention he quotes from statements made before the House Ways and Means Committee during its hearings on the Act. Those statements indeed do not reflect the plenary-nonplenary distinction that appears in the final committee reports. It is significant to note, however, that the earlier versions of the Act then before the House committee differed markedly from the version that was finally reported to the House and to the Senate. In those earlier versions, § 7425(b) was restricted to "nonjudicial sales" made "pursuant to an instrument creating a lien." Federal Tax Lien Act of 1966: Hearings on H.R. 11256 and H.R. 11290 before the House Committee on Ways and Means, 89th Cong., 2d Sess., 14–15, 30–31 (1966) (text of H.R. 11256, § 7425 and H.R. 11290, § 7425). As noted above (see note 11), § 7425(b) in its final version was greatly expanded. The congressional reports as to the final version of that section clearly show an intent to establish the plenary-nonplenary distinction

sult is to occur when the property is sold pursuant to the judgment; the lien on the property continues into the hands of the third person. Where the Government is joined in these proceedings no change is made by the bill in the present operation of local law.

Where a notice of tax lien is not filed before a *plenary proceeding* commences—even in those cases where the filing is not required, such as in the case of a special lien for estate and gift taxes—a judicial sale is to have the same effect with respect to a tax lien as local law provides with respect to such matters. One exception is provided to this rule: where the Government is not joined as a party and the sale discharges the tax lien, the Government may still assert its claim against the proceeds of the sale at any time before the distribution is ordered with the same force as the lien had against the property sold.

(2) Other foreclosure proceedings (sec. 7425(b) of the code)

The bill provides that, *in the case of all other foreclosure proceedings*, where timely notice of the proceedings is given to the Government, the Government's claim to

property under a tax lien is to be discharged in the manner provided by local law.

Where foreclosures covered by this provision are made without proper notice to the Government, the bill provides that this does not affect the Government's claim under a tax lien (as where the Government is not joined in a judicial foreclosure). In these cases, the Government's claim continues against the property into the hands of a third party. On the other hand, where notice of the Government's claim under a tax lien is not filed (even in those cases where filing is not required), or where the Government is notified of the proceeding, a sale has the same effect on the claim as local law provides with respect to similar claims. (This is the same result as where the Government is not joined as a party in a plenary proceeding where its lien is not on file.)

H.R.Rep.No. 1884, 89th Cong., 2d Sess. (1966), 1966–2 Cum.Bull. 815, 832–33 (emphasis added). The report of the Senate Finance Committee on § 7425 is identical. S.Rep.No. 1708, 89th Cong., 2d Sess. (1966), 1966–2 Cum.Bull. 876, 895–96, 1966 U.S.Code Cong. & Admin.News 3722, 3748–49.

indicated by the differentiation between "judicial proceedings" and (all) "other sales" by way of foreclosure.

■ Myers also contends that the plenary-nonplenary distinction described in the congressional committee reports and adopted by the court below does not stand up in the light of two recent federal court decisions interpreting § 7425. The gist of this contention is that § 7425(a) controls whenever there is a judicial proceeding in which the United States might be named a party or in which the United States might intervene to assert its rights.[12] For reasons somewhat tedious to explain (see notes 13 and 14), neither of the two decisions relied upon—*A.H. and R.S. Coal Corporation v. United States*, 461 F.Supp. 752 (W.D.Pa. 1978)[13] and *Galesi v. United States*, 406 F.Supp. 623 (D.Vt.1976), *aff'd*, 544 F.2d 606 (2d Cir. 1976)[14] support the nondistinction

12. 26 U.S.C. § 7424 authorizes the United States to intervene in a civil action to which it is not a party in order to assert any federal lien on the property which is the subject of the suit. If intervention is successful, the provisions of 28 U.S.C. § 2410 are to apply "as if the United States had originally been named a defendant." If intervention is denied, the adjudication will not affect the federal lien.

13. In *A.H. and R.S. Coal Corp. v. United States*, the court sought to determine whether the sale of personal property, foreclosed upon without judicial proceedings of any kind, was effective in discharging a federal tax lien filed more than thirty days before the sale. The court concluded that the sale was governed by § 7425(b):

> "What may accurately be denominated as a judicial sale is not very well settled" but a judicial sale must have certain basic ingredients.... To be classified as a judicial sale, the sale "must be based upon an order, decree or judgment *directing* sale."
>
> The sale of [the] personalty did not emanate from a judgment.... Since the personal property was not sold pursuant to a judicial decree, its sale should be classified as a non-judicial sale.

*A.H. and R.S. Coal Corp. v. United States, supra*, 461 F.Supp. at 755 (citations omitted). Myers quotes language to the effect that "[t]he crucial inquiry is whether the personal property was sold pursuant to a judicial decree," *id.* at 755 n.1, as authority for the proposition that the crux of the distinction between "judicial sales" and "other sales" is whether a judge was involved in the foreclosure proceedings. We disagree. The court in *A.H. and R.S. Coal Corp. v. United States* did not face the kind of executory judicial proceeding that is at issue here and did not purport to examine the distinction between "judicial" and "other" sales in any depth. In terms, the court held only that, in the *absence* of judicial involvement, a sale could not be considered to have been made pursuant to judicial proceedings. That holding does not logically imply that the mere presence of judicial involvement is in itself enough to place an executory foreclosure proceeding within the ambit of "judicial proceedings" as that term is used in the Act. We conclude,

therefore, that the *A.H. and R.S. Coal Corp.* case is inapposite to the inquiry now before us.

14. In *Galesi*, the property in question was sold pursuant to a state "strict" foreclosure proceeding seeking only to cut off the mortgagor's equity of redemption. All other lienholders on the property were joined as defendants in the action. After the commencement of that action, however, the United States filed notice of its federal tax lien on the property. The single issue before the *Galesi* court was whether the sale in question was governed by the provisions of § 7425(a) (in which case the federal tax lien was discharged) or § 7425(b) (in which case the federal lien was not discharged). There was no suggestion in that case that the strict foreclosure proceeding was anything other than plenary. The government's attempt to characterize the sale as an "other" sale within the meaning of § 7425(b) was based solely on the fact that the strict foreclosure proceeding did not seek a judicial sale of the property. The court rejected the government's contention, holding that the mere fact that the foreclosure proceeding sought to cut off the mortgagor's equity of redemption rather than to effect the judicial sale of the property was not enough to remove that proceeding from the ambit of § 7425(a), as a "judicial proceeding," particularly when the government could have intervened under § 7424 to obtain a judicial sale. *Galesi v. United States, supra*, 406 F.Supp. at 626–27. Significantly, the court in so doing expressly recognized the plenary-nonplenary distinction that is at issue in the present case:

> The provisions of 26 U.S.C. § 7425(a) relate to sales resulting from plenary judicial proceedings in which the United States is not joined as a party. The pendency of judicial proceedings, in which the United States is not joined, provides a vehicle for the Government to intervene to protect its interest, as provided in 26 U.S.C. § 7424, if it elects to do so. *Subsection (b) of 7425 applies in cases where the sale of the subject property is made outside the framework of plenary judicial action.*

*Id.* at 627 (emphasis added).

As we read *Galesi*, then, it stands only for the proposition that the redemption of property

of plenary-nonplenary for which Myers argues.

■ We conclude, therefore, that § 7425(a) applies only to sales made pursuant to *plenary* judicial proceedings, and that § 7425(b) applies to all other foreclosure sales. Since Louisiana's executory foreclosure proceeding is not a plenary judicial proceeding, it necessarily falls within the ambit of § 7425(b). Section 7425(b) provides that where notice of a federal tax lien is duly filed more than thirty days prior to the date of the foreclosure sale, the sale will be made subject to the federal lien unless written notice of the sale is served upon the United States at least twenty-five days before the sale is held. It is undisputed that such notice was not given in the present case. It therefore follows that the second federal lien was not discharged by the foreclosure sale.

## II

Myers' final contention is that the levy here at issue violated the provisions of the due process clause of the Fifth Amendment.

There is no suggestion on this appeal that the federal tax liens upon which the challenged levy was based did not properly attach to the property in question,[15] and we have determined that the liens were not discharged by the foreclosure sale. The challenged levy was thus based upon valid and existing tax liens.

■ Under § 6331,[16] the United States is authorized to collect delinquent taxes "by levy upon all property and rights to property ... on which there is a lien provided in this chapter for the payment of such tax." 26 U.S.C. § 6331(a). The term "levy" as used in the Act includes "the power of distraint and seizure by any means." 26 U.S.C. § 6331(b). And, where levy is proper, the United States may seize and sell the property levied upon. *Id.* Such levy and seizure need not be accomplished while the property is in the hands of the taxpayer; so long as the property is subject to a valid federal tax lien, it may be seized in the hands of any subsequent purchaser. Treas. Reg. § 301.6331–1(a)(1) (1979); Mertens, Code Commentary, *supra*, § 6331:1; W. Plumb & L. Wright, Federal Tax Liens 201 (2d ed. 1969).

There is no suggestion on this appeal that the United States in any way deviated from the prescribed levy procedures established by the Act and its attendant regulations.

pursuant to *plenary* foreclosure proceedings commenced before the filing of a federal tax lien will discharge the federal lien, even though the proceedings were a strict foreclosure (*i. e.*, fixing the amount due, providing that in default of payment the debtor's equity of redemption is forever foreclosed, and granting junior security creditors the right to redeem the property) and did not seek judicial sale of the property, if the government had constructive notice of the proceedings and yet failed to seek intervention under 26 U.S.C. § 7424. Nothing in that case or in the Act would suggest that *nonplenary* foreclosure proceedings, otherwise governed by § 7425(b), are brought within the ambit of § 7425(a) merely because the United States might intervene therein by virtue of § 7424 and the provisions of state law. *Galesi*, in our view, is inapposite to the issue now before us.

15. The liens arose pursuant to 26 U.S.C. § 6321, which provides:

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

16. 26 U.S.C. § 6331 provides, in pertinent part:

(a) Authority of the Secretary or delegate. —If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax ... by levy upon all property and rights to property ... belonging to such person or on which there is a lien provided in this chapter for the payment of such tax....

(b) Seizure and sale of property.—The term "levy" as used in this title includes the power of distraint and seizure by any means. Except as otherwise provided in subsection (d)(3), a levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

The gravamen of Myers' complaint is that the prescribed procedures are themselves constitutionally defective in that they permit the seizure of private property without a preseizure hearing or a prompt and adequate postseizure hearing.

The Supreme Court of the United States has long recognized that, so long as there is an adequate opportunity for postseizure determination of rights, the summary tax collection procedures of the Internal Revenue Code meet the requirements of due process. *See G.M. Leasing Corp. v. United States*, 429 U.S. 338, 352 n.18, 97 S.Ct. 619, 628 n.18, 50 L.Ed.2d 530 (1977); *Commissioner v. Shapiro*, 424 U.S. 614, 630–32 & n.12, 96 S.Ct. 1062, 1072–73 & n.12, 47 L.Ed.2d 278 (1976); *Fuentes v. Shevin*, 407 U.S. 67, 91–92 & n.24, 92 S.Ct. 1983, 2000 & n.24, 32 L.Ed.2d 556 (1972); *Phillips v. Commissioner*, 283 U.S. 589, 590–98, 51 S.Ct. 608, 611–12, 75 L.Ed. 1289 (1931). And indeed, the particular provisions of § 6331 have withstood numerous constitutional challenges predicated on the lack of preseizure judicial hearings. *See, e. g., Ginter v. Southern*, 611 F.2d at 1226, 1228 (8th Cir. 1979), *cert. denied*, 446 U.S. 967, 100 S.Ct. 2946, 64 L.Ed.2d 827 (1980); *United States v. Pilla*, 550 F.2d 1085, 1092 (8th Cir.), *cert. denied*, 432 U.S. 907, 97 S.Ct. 2954, 53 L.Ed.2d 1080 (1977); *United States v. Heck*, 499 F.2d 788, 792–93 (9th Cir.), *cert. denied*, 419 U.S. 1088, 95 S.Ct. 677, 42 L.Ed.2d 680 (1974).

The Act does provide an opportunity for prompt postseizure judicial determination of the validity of the levy. 26 U.S.C. § 7426[17]. This remedy is *prompt* insofar as a third person whose property is seized pursuant to a levy for a tax owed by another; for the third person is permitted immediate access to the courts on his claim of wrongful levy including the right to seek

---

17. 26 U.S.C. § 7426 provides, in pertinent part:

(a) Actions permitted.—

(1) Wrongful levy.—If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary or his delegate.

. . . .

(b) Adjudication.—The district court shall have jurisdiction to grant only such of the following forms of relief as may be appropriate in the circumstances:

(1) Injunction.—If a levy or sale would irreparably injure rights in property which the court determines to be superior to rights of the United States in such property, the court may grant an injunction to prohibit the enforcement of such levy or to prohibit such sale.

(2) Recovery of property.—If the court determines that such property has been wrongfully levied upon, the court may—

(A) order the return of specific property if the United States is in possession of such property;

(B) grant a judgment for the amount of money levied upon; or

(C) grant a judgment for an amount not exceeding the amount received by the United States from the sale of such property. For the purposes of subparagraph (C), if the property was declared purchased by the United States at a sale pursuant to section 6335(e) (relating to manner and conditions of sale), the United States shall be treated as having received an amount equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

(3) Surplus proceeds.—If the court determines that the interest or lien of any party to an action under this section was transferred to the proceeds of a sale of such property, the court may grant a judgment in an amount equal to all or any part of the amount of the surplus proceeds of such sale.

(4) Substituted sale proceeds.—If the court determines that a party has an interest in or lien on the amount held as a fund pursuant to an agreement described in section 6325(b)(3) (relating to a substitution of proceeds sale), the court may grant a judgment in an amount equal to all or any part of the amount of such fund.

(c) Validity of assessment.—For purposes of an adjudication under this section, the assessment of tax upon which the interest or lien of the United States is based shall be conclusively presumed to be valid.

. . . .

injunctive relief.[18] *Id.; Valley Finance, Inc. v. United States,* 629 F.2d 162, 170–71 & n.19 (D.C.Cir.1980). *See* Plumb & Wright, Federal Tax Liens, *supra,* at 215–21.

■ Myers argues that this postseizure remedy is inadequate because it affords him no opportunity to contest the validity of the tax assessment giving rise to the liens upon which the levy was based. *See Flores v. United States,* 551 F.2d 1169, 1175 n.5 (9th Cir. 1977).[19] Myers is correct that the Act precludes third party attack upon the validity of the underlying tax assessment in actions brought under § 7426. 26 U.S.C. § 7426(c). *See Shannon v. United States,* 521 F.2d 56, 59 (9th Cir. 1975), *cert. denied,* 424 U.S. 965, 96 S.Ct. 1458, 47 L.Ed.2d 731 (1976). However, we perceive no constitutional infirmity in that restriction.

The hearing requirements of the due process clause are neither inflexible nor absolute. The Supreme Court has been at pains to point out that "the timing and content of the notice and the nature of the hearing will depend on appropriate accommodation of the competing interests involved." *Goss v. Lopez,* 419 U.S. 565, 579, 95 S.Ct. 729, 738–39, 42 L.Ed.2d 725 (1965). *See Commissioner v. Shapiro, supra,* 424 U.S. at 630 n.12, 96 S.Ct. at 1072 n.12; *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950).

In the context of the present case, we cannot say that Myers was not afforded prompt and meaningful postseizure hearing rights. Myers purchased property subject to two duly recorded (although improperly cancelled) federal tax liens. Under the provisions of § 7426, he was entitled to bring an immediate action in order to contest the levy made pursuant to those liens. During the course of that proceeding, Myers was entitled to full judicial consideration, in an adversary context, of the validity of the levy. He was entitled to show that the liens had not properly attached to the property in question, that the liens had been discharged through foreclosure and sale of the property, that the liens had been discharged through payment of the tax assessed, that his own interest in the property was superior in rank to the federal liens, and that the government had failed to follow the procedural requirements of the Act—in short, Myers was entitled to raise virtually any legitimate and available objection he might have had to the validity of the levy. What he could not do is challenge the merits of the tax assessment itself, which had determined the tax liability of a former owner of the property—with finali-

**18.** A levy is wrongful within the meaning of the Act if: (1) The property levied upon is exempt from levy under § 6334; (2) the levy is upon property in which the *taxpayer* had no interest at the time the lien arose or thereafter; (3) the plaintiff is a purchaser against whom the lien is invalid under § 6323, § 6324(a)(2), or § 6324(b); or (4) the levy or sale pursuant to levy will destroy or irreparably injure the plaintiff's interest in the property that is superior to the federal tax lien. Treas.Reg. § 301.7426–1(b) (1974). The district court is empowered in such actions to grant (*inter alia*) injunctive relief where levy or sale would irreparably injure rights superior to those claimed by the United States, 26 U.S.C. § 7426(b)(1), and to order restitution of the property, the amount of money levied upon, or the proceeds of the tax sale in the event of wrongful levy, *id.* § 7426(b)(2).

**19.** [T]he Supreme [C]ourt, while not yet addressing the question specifically, has also recently noted that three key cases (*North*

*Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 607, 95 S.Ct. 719 [722], 42 L.Ed.2d 751 (1975); *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 610–611, 94 S.Ct. 1895 [1901–1902], 40 L.Ed.2d 406 (1974); and *Fuentes v. Shevin,* 407 U.S. 67, 72, 92 S.Ct. 1983 [1990], 32 L.Ed.2d 556 (1973)) could raise the question of whether "due process demands that the taxpayer in a jeopardy assessment situation be afforded a prompt post-assessment hearing at which the *Government* must make some preliminary showing in support of the assessment." (Emphasis added.) *Laing v. United States,* 423 U.S. 161, 183–184 n.26, 96 S.Ct. 473, 485, 46 L.Ed.2d 416 (1976).

While a related and quite probably stronger argument might well be presented by a third party holder of property seized to satisfy the jeopardy assessment of another, we are not here presented with such a demand for a prompt post-seizure hearing. *Flores v. United States,* 551 F.2d 1169, 1175 n.5 (9th Cir. 1977).

ty, under substantive law, insofar as a third person who subsequently purchases the taxpayer's property is concerned.

■ We do not believe due process requires that Myers, a third person, be allowed to challenge the tax liability of the former owner of the property. As we have noted, the resolution of asserted due process violations requires a careful weighing of the competing interests involved. *Commissioner v. Shapiro, supra,* 424 U.S. at 630 n.12, 96 S.Ct. at 1072 n.12; *Goss v. Lopez, supra,* 419 U.S. at 579, 95 S.Ct. at 738–39. The collection of the revenues is among the most paramount of governmental interests. *See, e. g., G.M. Leasing Corp. v. United States, supra,* 429 U.S. at 352 n.18, 97 S.Ct. at 628 n.18; *Commissioner v. Shapiro, supra,* 424 U.S. at 630 n.12, 96 S.Ct. at 1072 n.12; *Fuentes v. Shevin, supra,* 407 U.S. at 92 & n.24, 92 S.Ct. at 2000 & n.24; *Bull v. United States,* 295 U.S. 247, 259–60, 55 S.Ct. 695, 699–700, 79 L.Ed. 1421 (1935). As against this "imperious need," *Bull, supra,* 295 U.S. at 259, 55 S.Ct. at 699, of the federal government is balanced the interests of a property owner who acquired his rights through a foreclosure sale made subject to two duly recorded federal tax liens. That interest—although it is sufficient to require, as a matter of due process, a prompt and meaningful judicial determination of the superiority of the respective interests claimed by the property holder and the United States—does not compel us to conclude that due process requires the underlying tax assessment to be opened to collateral attack by the third party holder of the property levied upon.

■ To the contrary, we would note that a tax assessment is in the nature of a judgment, *Bull v. United States, supra,* 295 U.S. at 260, 55 S.Ct. at 699–700, the merits of which the *taxpayer* himself has ample opportunity to contest, *see* 26 U.S.C. § 6213. In this light, we believe that well accepted notions concerning the finality of judgments and their immunity from collateral

attack provide a useful analogy in the resolution of the issue before us. In keeping with this view, courts have recognized a general rule that such assessments are not open to collateral attack by non-taxpayers. *Moyer v. Mathas,* 458 F.2d 431, 434 & n.4 (5th Cir. 1972). *See Al-Kim, Inc. v. United States,* 610 F.2d 576, 579 (9th Cir. 1979).

We conclude, therefore, that since the statutory scheme affords a prompt and meaningful opportunity for the postseizure judicial determination of rights relative to the levy itself, the plaintiff Myers was not denied any due process rights by the tax levy procedures at issue.

### Conclusion

Accordingly, we find no error in the district court's conclusion that the foreclosure and sale of the property here in question, pursuant to Louisiana's executory foreclosure process, constituted an "other sale" within the meaning of 26 U.S.C. § 7425(b), and that therefore the foreclosing creditor's failure to serve notice upon the United States as required by that section precluded the discharge of the federal tax liens by virtue of that foreclosure sale. In addition, we hold that the levy procedures of the Act, as applied in the context of the case before us, fully comport with the requirements of the due process clause of the Fifth Amendment.

Accordingly, the judgment of the court below is AFFIRMED.

AFFIRMED.