**David W. BARROW and Tim T. Morris, Plaintiffs-Appellants,**

v.

**TENNESSEE DEPARTMENT OF REVENUE, Defendant-Appellee.**

Supreme Court of Tennessee, at Nashville.

March 14, 1983.

William H. Horton, James David Kendall, Chattanooga, for plaintiffs-appellants.

Gregory L. Nelson, Asst. Atty. Gen., Nashville, for defendant-appellee; William M. Leech, Jr., Atty. Gen., Nashville, of counsel.

OPINION

HARBISON, Justice.

This case arises under the Tax Enforcement Procedures Act of 1972, T.C.A. §§ 67–6001 to –6045. Specifically it involves the question of whether a state tax lien is extinguished or disturbed by the foreclosure of prior recorded deeds of trust when notice by the foreclosing creditor is not given to the state as required by T.C.A. § 67–6035.[1] The Chancellor held that such foreclosure sales remain subject to the tax lien and that purchasers at such foreclosure

1. Reproduced in pertinent part in an appendix    to this opinion.

take the property subject to the outstanding tax lien. We affirm.

The holding of the Chancellor was in accord with the literal language of T.C.A. § 67–6035. It was stipulated between the parties that the twenty-five day written notice to the Commissioner of Revenue was not given, nor was there any evidence that there was any attempt to give the notice or to comply with the statutory requirement.

■ The Tax Enforcement Procedures Act of 1972 was designed to reorganize, modernize and make systematic procedures for the collection of state taxes and the enforcement of liens. The deeds of trust foreclosed in the present case were not recorded until 1974, and the foreclosure sale did not occur until August 29, 1979. Clearly, therefore, the 1972 statute was in force and effect both when the deeds of trust were recorded and when the foreclosure occurred.

The purchasers, appellants here, rely upon the provisions of T.C.A. § 67–6046, enacted in 1978, which sets out priorities of state tax liens with respect to other liens. Among other things this statute provides that such tax liens are not superior to deeds of trust recorded prior to recordation of the notice of the state lien. T.C.A. § 67–6046(c)(2).

This statute, however, was nothing more than a re-codification and an amplification of earlier statutes to the same effect. In 1974 when the deeds of trust were recorded and in 1975 when notice of the tax lien was recorded, T.C.A. § 67–1808 provided for a lien for state taxes and also provided that:

"... such lien shall be inferior ... to existing liens created by contracts ...."

*See Commerce Union Bank v. Possum Holler, Inc.,* 620 S.W.2d 487 (Tenn.1981).

■ The 1978 statute simply replaced the earlier one, providing in greater detail the relative priorities of liens, particularly with reference to those created under the Uniform Commercial Code. Insofar as this case is concerned, however, it made no material change in existing law with respect to the relative priorities between a state tax lien and a previously recorded deed of trust. The fact that the state lien was junior did not relieve the senior creditor from complying with the notice requirements of T.C.A. § 67–6035.

Appellants seek to avoid the operation of the latter statute on the ground that state tax officials had "actual notice" of the proposed foreclosure sale. In this regard the parties stipulated many of the material facts but filed sharply conflicting affidavits with respect to others.

Foreclosed on August 29, 1979, were two deeds of trust representing indebtedness to the same creditor in the original principal balance of $149,111.04. This indebtedness was represented by two notes, one executed January 10, 1974, and another July 26, 1974, each of the notes secured by a deed of trust to the same trustee. On the date of the foreclosure sale in 1979 the principal balance on the total indebtedness had been reduced to $59,001.19.

On August 22, 1975, there was recorded notice of a state sales tax lien against the same property. On the date of the foreclosure sale the balance claimed by the state was $21,273.26. At the foreclosure sale the purchasers bid in the property for $65,351, more than $83,000 less than the original principal balance of the indebtedness. There is no evidence in the record as to the fair market value of the property on the date of the sale or as to its condition.

There are conflicting affidavits as to whether notice of the state tax lien was or was not announced to bidders at the sale. Affidavits from two state officials state that such announcement was made, and that the purchasers agreed with the state officials after the sale that they would promptly pay the lien. The purchasers did not give countervailing affidavits, but two officials of the foreclosing creditor, a banking institution, stated that no public announcement of the lien was made.

The sale had originally been advertised in July 1979 and was scheduled for August 15. On the latter date, however, the sale was postponed for two weeks to give the de-

faulting debtor an opportunity to refinance or to cure the default, but apparently this was not accomplished.

One of the bank officials gave an affidavit that an unidentified, unnamed person claiming to be a state tax official contacted him by telephone on August 14, 1979, the day before the sale was originally scheduled. This person did not ask nor did the bank official give any information concerning the property, its condition or value, or the balance due on the mortgages held by the bank. Other state officials, however, gave affidavits that they had no knowledge of the proposed foreclosure sale until August 28, 1979, the day before the actual sale was held. Two of these officials did attend the sale, and they stated that they did announce the state tax lien and were told by the purchasers that it would be paid.

We have no way of knowing from the present record whether the purchasers did or did not take into account the outstanding sales tax lien in making their bids. As stated, they bid the property in far below the original balance due on the mortgages, but neither of them gave affidavits or testified in the case.

Appellants cite no authority whatever for the proposition that actual knowledge by the state, even if established, would obviate or render ineffective the requirements of written notice and detailed information as called for by T.C.A. § 67–6035. The latter statute is almost verbatim a duplication of a similar federal statute, 26 U.S.C. § 7425(b) and (c). Cases construing that statute have uniformly held that actual knowledge by a federal tax official of a pending foreclosure did not relieve the foreclosing creditor of the statutory requirement of providing written notice and detailed information to the federal taxing authorities. *See Baum v. United States,* 74–1 USTC (CCH) 84, 026, *aff'd* 535 F.2d 1240 (2d Cir.1975); *A.H. & R.S. Coal Corp. v. United States,* 461 F.Supp. 752 (W.D.Pa. 1978); *Puls v. United States,* 387 F.Supp. 760 (N.D.Cal.1974); *Dime Savings Bank of Brooklyn v. Sherman,* 64 Misc.2d 457, 314 N.Y.S.2d 86 (1970).

The trustee's deeds to the purchasers in the present case were expressly made subject to the claimed sales tax lien. It is obvious, therefore, that even if the state officials did not announce the existence of their claim of lien at the sale, as their affidavits state, the trustee for the foreclosing creditor was aware of the asserted lien by the time he executed his deeds and undertook to protect himself against it. A proper search of the records would have revealed the lien before the sale so that the required notice could have been given. This would have permitted the state to make a proper investigation as to whether it might wish to bid on the property to protect its lien. In the alternative, the state might have consented to the sale as provided in the statutes had a proper request been made.

The judgment of the Chancellor was correct and is affirmed in all respects at the cost of appellants. The cause will be remanded to the chancery court for entry of any further orders which may be appropriate.

FONES, C.J., and COOPER, BROCK and DROWOTA, JJ., concur.

## APPENDIX

"67–6035. EFFECT OF ENFORCEMENT OF OTHER LIENS—NONJUDICIAL SALES.—(a) Notwithstanding § 67–6034, a sale of property on which the state has or claims a lien, or a title derived from enforcement of a lien, under the provisions of this title, made pursuant to an instrument creating a lien on such property, pursuant to a confession of judgment on the obligation secured by such an instrument, or pursuant to a nonjudicial sale under a statutory lien on such property shall, except as otherwise provided, be made subject to and without disturbing such lien or title, if notice of such lien was filed or such title recorded in the place provided by law for such filing or recording more than thirty (30) days before such sale and the state is not given notice of such sale in the manner prescribed in subsection (b).

"(b) Special Rules.

"(1) Notice of sale. Notice of a sale to which subsection (a) applies shall be given (in accordance with regulations prescribed by the commissioner) in writing, by registered or certified mail or by personal service, not less than twenty-five (25) days prior to such sale, to the commissioner or his delegates.

"(2) Consent to sale. Notwithstanding the notice requirement of this section, a sale described in subsection (a) of property shall discharge or divest such property of the lien or title of the state if the state consents to the sale of such property free of such lien or title."