### MIDDLESEX SAVINGS BANK, Plaintiff,

v.

### Raymond A. JOHNSON, et al., Defendants.

### Civ. A. No. 90–12711–WD.

United States District Court, D. Massachusetts.

Sept. 9, 1991.

---

Arnold I. Zaltas, Zaltas, Medoff & Raider, Natick, Mass., for plaintiff.

Stephen Wald, Craig & Macauley, Boston, Mass., James A. Frieden, Los Angeles, Cal., for defendants Thomas W. Nadolski, Rosemary C. Nadolski and Robert C. Lyons.

Susan M. Poswistilo, U.S. Atty.'s Office, John W. McCormack Poch, Boston, Mass., Henry J. Riordan, U.S. Dept. of Justice, Tax Div., Washington, D.C., for defendant U.S. I.R.S.

## MEMORANDUM AND ORDER

WOODLOCK, District Judge.

Plaintiff, Middlesex Savings Bank, commenced this interpleader action in the state court after foreclosing a lien against real estate owned by defendant Raymond Johnson ("Johnson") at 27–29 Crane Ave., in Maynard, Massachusetts. The foreclosure resulted in surplus proceeds of $56,115.11, to which Middlesex Savings Bank makes no claim. Excluding Johnson,[1] six other defendants were named, each appearing to have an interest in the aforementioned real property.

■ Now before me are three motions for summary judgment and one motion to compel discovery.[2] No matters of fact seem to be in dispute. The United States, as a defendant under 28 U.S.C. § 2410, removed the case to this court pursuant to 28 U.S.C. § 1444. The United States has now moved for summary judgment based on its alleged lien on Johnson's property, which arose from the federal tax assessment of $51,273.31[3] made against him on April 10, 1989, pursuant to 26 U.S.C. § 6672. The motion of the United States is well founded and will be allowed. The motion by one set of defendants to delay ruling on summary judgment and to compel the United States to respond to their discovery requests has no foundation in the law and will be denied. As a consequence of these decisions, the issues raised by the other two pending summary judgment motions are moot, and those motions will also

---

1. Johnson never answered the complaint commencing this action.

2. In addition, several defendants seek a determination of material facts which exist without substantial controversy, see Fed.R.Civ.P. 56(d), and there are several motions to extend deadlines already past.

3. The United States represents that the balance due on this assessment, including accrued interest, amounted to $61,502.38 as of November 19, 1990. No party has raised the question of whether the priority accorded the lien should extend to interest accrued *subsequent* to the date the lien arose. The code itself, although failing to distinguish clearly between pre- and post-demand interest, suggests that post-demand interest is included. Section 6321 states:

 If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

See also United States v. Vermont, 377 U.S. 351, 352, 84 S.Ct. 1267, 1268, 12 L.Ed.2d 370 (1964) (Vermont statute which refers to the amount of the tax lien as "including interest after such demand" is "worded in terms virtually identical to the provisions of th[e] federal statute[ ]").

 Section 6303(a) requires that the notice state the amount at issue, although the form of the notice filed to "validate" the lien is not prescribed by the statute itself, see § 6323(f)(3). The form, however, is defined by IRS regulations as Form 668, see 26 CFR § 301.6323(f)–1(c). Although the copy of Form 668 actually filed in this case states that the unpaid balance as of the date of assessment was § 51,263.21, that form warns that the lien includes "the amount of these taxes, and additional penalties, interest, and costs that may accrue." See Mem. of U.S., docket no. 12, ex. B. In addition, § 6103(2) allows for disclosure of the amount of an outstanding lien "to any person who furnishes satisfactory written evidence that he has a right in the property subject to such lien or intends to obtain a right in such property." Consequently, I conclude that the amount of the lien in favor of the United States includes the subsequently accrued interest and therefore exceeds the interpled funds.

be denied.[4]

## I

I will consider the property interests of the various parties and their claims to priority *seriatim.*

### A. Tax Lien of the United States

■ Johnson's failure to pay the federal tax assessment made against him, after notice and demand, created a federal lien attaching to all his property effective April 10, 1989—the date the assessment was made. 26 U.S.C. §§ 6321–6322. Under federal law, the rule of "first in time, first in right" generally determines priority. *See United States v. New Britain,* 347 U.S. 81, 85–86, 74 S.Ct. 367, 370–371, 98 L.Ed. 520 (1954). And, it is well established that "[t]he effect of a lien in relation to a provision of federal law for the collection of debts owing the United States is always a federal question." *United States v. Security Trust & Savings Bank,* 340 U.S. 47, 49, 71 S.Ct. 111, 113, 95 L.Ed. 53 (1950).

However, a federal tax lien is "valid" against *certain* third persons (e.g., judgment lien creditors) only after being recorded by filing a notice of the lien pursuant to § 6323(f). 26 U.S.C. § 6323(a). On July 19, 1989, the United States filed notice of the lien arising from the assessment. Thus, the federal tax lien on property belonging to Johnson is superior to any subsequently perfected claim.[5]

### B. Tax Lien of Commonwealth

■ The Commissioner of Revenue initially moved for summary judgment in favor of the Commonwealth (hereinafter both the Commissioner and the State of Massachusetts will be referred to as "the Commonwealth") on the basis of its allegedly superior tax lien pursuant to Mass.Gen.L. ch. 62C, § 50. That motion has been opposed by the five other participating defendants. However, the Commonwealth has not filed an opposition to the motion of the United States for summary judgment.

■ The tax lien of the Commonwealth against the assets of Johnson arose on July 7, 1989—the date the assessment was made. *See* Mass.Gen.L. ch. 62C, § 50(a). The notice of the state tax lien against Johnson was not filed until August 24, 1989.[6]

The tax lien in favor of the United States arose prior to that of the Commonwealth, and consequently the claim of the United States has priority. It does not matter that the Commonwealth's lien arose prior to the

---

**4.** Memoranda filed in support of these motions for summary judgment concern the priority of various claims made by the moving defendants. The relative priority of all claims inferior to that of the United States is moot, since the superior claim of the United States exhausts the interpled funds.

**5.** Section 6323(b) protects certain claimants even if their claim arises after the tax lien is properly recorded. No such "superpriorities" are of concern in the instant case.

**6.** In its motion for summary judgment, the Commonwealth relies in part on an assessment against Kenbo Inc., a corporation for which Johnson was allegedly the responsible officer. Based on a Massachusetts statute, the Commonwealth argues that such an assessment is deemed to be assessed against Johnson personally. Mem. of Commonwealth, docket no. 4, at 5 (citing Mass.Gen.L. ch. 62C, § 31A). A notice of lien against Kenbo, Inc. was filed on November 30, 1988. Thus, the Commonwealth suggests that its lien against Johnson's assets is

effective against all subsequent creditors (etc.) as of November 30, 1988. *Id.* at 6 (citing Mass. Gen.L. ch. 62C, § 50(b)).

However, the "deemed assessment" against the responsible officer provided for in § 31A requires that the Commonwealth notify a liable individual of the assessment against the corporation. *Heritage Bank for Savings v. Doran,* 399 Mass. 855, 861, 507 N.E.2d 690 (1987). Not only has the Commonwealth failed to present evidence that such notice was directed at Johnson personally (the Loconto Aff. is inadequate in this and several other respects; including the fact that the notices in question are not attached as exhibits), it does not even make such an allegation. Furthermore, even if under Massachusetts law a lien against property personally owned by Johnson could be created simply by a notice of assessment against Kenbo, Inc., it is doubtful that such a lien would be sufficiently "choate" under federal standards to have priority over a federal tax lien. *See New Britain,* 347 U.S. at 84, 74 S.Ct. at 369 (requiring certainty with respect to the identity of the lienor and the property subject to the lien).

date on which the federal lien was *filed*. The lien of the Commonwealth does not come within any of the classifications of persons (e.g., purchasers, judgment lien creditors) to whom the federal law accords priority until notice of the federal tax lien has been filed. *See* 26 U.S.C. § 6323(a); *see also New Britain*, 347 U.S. at 88, 74 S.Ct. at 371 (predecessor statute indicates Congress did not intend antecedent federal tax liens to rank behind any but the specific categories of interests set out); *United States v. Gilbert Associates, Inc.*, 345 U.S. 361, 363–65, 73 S.Ct. 701, 703–04, 97 L.Ed. 1071 (1953) (under predecessor statute, state tax assessments are not "judgments" and notice is not required for federal tax lien to have priority over them).

### C. Attachment by South Shore Bank

■ Defendant South Shore Bank ("South Shore") originally filed a "limited opposition" to the summary judgment motion made by the Commonwealth, objecting to the extent that the motion sought to establish that the claim of the Commonwealth to the interpled monies was superior to its own. Although South Shore requested an extension of time to oppose the motion of the United States for summary judgment, it has not filed any opposition.

South Shore bases its claim to the interpled funds on a prejudgment attachment against Johnson of $150,000. According to South Shore, the attachment was filed with the Registry of Deeds on November 30, 1988, but as of December, 1990, no judgment had been entered in its favor.

■ The tax lien of the United States is superior to the claim of South Shore. In this case, as in *Security Trust*, "the federal tax lien was recorded subsequent to the date of the attachment lien but prior to the date the attaching creditor obtained judg-

ment." 340 U.S. at 48, 71 S.Ct. at 112. As Justice Jackson noted in *Security Trust*, in relation to the predecessor of the current tax lien statute, a federal tax lien is not valid against a judgment creditor without notice, but this protection only applies to "a judgment creditor in the conventional sense." *Id.* at 52, 71 S.Ct. at 114 (Jackson, J., concurring). South Shore was not a judgment creditor at the time of the filing of the federal tax lien, even if it eventually becomes one by receiving a judgment in its favor.[7] Because an attachment is contingent or inchoate—giving the attachment creditor "no right to proceed against the property unless he gets a judgment"—it is insufficient to defeat the federal priority. *Id.* at 50–51, 71 S.Ct. at 113–114; *accord United States v. Acri*, 348 U.S. 211, 213, 75 S.Ct. 239, 241, 99 L.Ed. 264 (1955). Clearly, the lien claimed by South Shore was not choate before the United States filed notice of its federal tax lien. Thus South Shore is not entitled to priority.

### D. Interest of the Judgment Creditors

Only defendants Thomas Nadolski, Rosemary Nadolski and Robert Lyons (collectively, "the Judgment Creditors") have formally opposed the summary judgment motion of the United States. Earlier, they also opposed the motion of the Commonwealth and sought summary judgment against the Commonwealth.

The Judgment Creditors obtained a prejudgment attachment for $80,000 against Johnson's property on December 1, 1988, which was filed with the Registry of Deeds on December 7, 1988. Subsequently, they obtained a judgment against Johnson in the amount of $672,505.41 on September 26, 1989, and a writ of execution for the property in Maynard on January 12, 1990,

---

7. In opposing the motion of the Commonwealth for summary judgment, South Shore maintains that under Massachusetts law its lien will be superior to that of the Commonwealth if it perfects its attachment by obtaining a judgment and execution and by properly levying thereon. Opp. of South Shore, docket no. 5, at 3 (citing *Kahler v. Marshfield*, 347 Mass. 514, 198 N.E.2d 647 (1964)). However, regardless of the law in Massachusetts, *Security Trust* specifically reject-

ed this very doctrine of "relation back" as ineffective against a federal lien. 340 U.S. at 50, 71 S.Ct. at 113. Thus even if, under Massachusetts law, South Shore as a successful attaching creditor would stand in the same position as a purchaser for value with respect to the tax lien of the Commonwealth, *see Kahler*, 347 Mass. at 516, 198 N.E.2d 647, no such rule would apply to the tax lien of the United States, whose priority is determined by federal law.

which was levied and recorded on January 31, 1990.[8]

The lien of the Judgment Creditors cannot defeat the priority of the federal lien any more than the attachment by South Shore could. The Judgment Creditors did not qualify as "judgment lien creditors" on July 19, 1989—the date the United States filed its notice of tax lien. Prior to attaining the judgment, the Judgment Creditors had only an attachment: an inchoate lien, not protected under 26 U.S.C. § 6323. *See supra,* § I,C. As conceded by the Judgment Creditors themselves, the federal lien has priority because their judgment was obtained after the federal tax lien was filed.

## II

Despite their concession concerning the superiority of the federal tax lien, the Judgment Creditors object to summary judgment in favor of the United States on grounds that

> the Government has presented no evidence whatsoever that (1) the taxes on which it relies were properly assessed and levied and (2) that the Judgment Creditors were given any notice of the assessments or opportunity to challenge such assessments.

Opp. to S.J. for U.S., docket no. 20, at 1. Echoing this first theme, the Judgment Creditors pray, in the alternative, for a delay to examine the tax file for Johnson and they have separately moved to compel compliance with discovery requests which seek a range of documents including the entire IRS file on Johnson.

### A. Challenging The Assessment

■ Authority addressing a variety of related issues suggests that a third party may not collaterally challenge a tax assessment, and thus the assessment is conclusively presumed valid in an action under § 2410.[9] Generally, a third party lacks standing and "is not entitled to contest the tax liability of another." *In re Campbell,* 761 F.2d 1181, 1185–86 (6th Cir.1985). The fact that a party may bear the ultimate economic burden as a result of payment of a tax does not make that party the taxpayer or establish standing. *See Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. United States IRS,* 845 F.2d 139, 142 (7th Cir.1988) (manufacturer is taxpayer of excise tax, even if passed on directly to consumer).

In a variety of contexts courts have recognized that tax assessments are not open to collateral attack by non-taxpayers. *See Myers v. United States,* 647 F.2d 591, 604 (5th Cir. Unit A June 1981) (citing *Moyer v. Mathas,* 458 F.2d 431, 434 & n. 4 (5th Cir.1972)); *see, e.g., Falik v. United States,* 343 F.2d 38, 41–42 (2d Cir.1965) (§ 2410 permits third parties to inquire into validity of lien, as distinct from the underlying tax assessment); *Graham v. United States,* 243 F.2d 919, 922 (9th Cir.1957) (nontaxpayer may not question validity of tax assessment in action to foreclose tax liens). In addition, there is considerable authority suggesting that tax assessments are not subject to attack except by means of specifically provided procedures. *See, e.g., United States v. Brosnan,* 363 U.S. 237, 260, 80

---

**8.** The Judgment Creditors argue that they had rights as a secured creditor as of December 7, 1988 because on that date their attachment was recorded and it was later perfected by levying the execution, pursuant to Mass.Gen.L. ch. 223, § 59, within 30 days. They argue that a properly perfected attachment places them "in the position of a purchaser for value with an 'immediate lien' as of the date of the attachment." Opp. to Commonwealth, at 3, (citing *Kahler v. Marshfield,* 347 Mass. 514, 198 N.E.2d 647 (1964)). Thus, because the state tax lien was not valid against a judgment creditor until notice was filed on August 24, 1989, *see* Mass.Gen.L. ch. 62C, § 50, the claim of the Judgment Creditors allegedly has priority over the lien of the Commonwealth. Regardless of its validity under

Massachusetts law, however, this means of "relation back" to an attachment prior to the assessment cannot defeat the federal tax lien which the IRS assessment gives rise to. *See supra* note 8.

**9.** The authorities, however, are not entirely univocal. *See generally* Annotation, *Right to Attack Merits of Assessment, in Proceeding Under 26 U.S.C. § 7403 to Enforce, or Under 28 U.S.C. § 2410 to Discharge, Federal Tax Lien,* 100 A.L.R.2d 869 (1961 & Supp.1983); *Conclusiveness of the Merits of a Tax Assessment and the Congressional Policy of Summary Tax Collection,* 71 Yale L.J. 1329 (1962).

S.Ct. 1108, 1121, 4 L.Ed.2d 1192 (1960) (Clark, J., dissenting) (dicta) (validity of tax may not be tested under § 2410 and § 7424 procedures); *Arford v. United States,* 934 F.2d 229, 232 (9th Cir.1991) (merits of underlying tax assessments may not be challenged in quiet title actions); *Pollack v. United States,* 819 F.2d 144, 145 (6th Cir. 1987) (suit under § 2410 is proper only to contest procedural regularity of lien, not to challenge the underlying tax liability).

 Similarly, in an action for wrongful levy brought by a third party pursuant to 26 U.S.C. § 7426, the merits of the tax assessment are not subject to attack. *Morris v. United States,* 652 F.Supp. 120, 122 (M.D.Fla.1986), *aff'd,* 813 F.2d 343 (11th Cir.1987). The IRC provides that for purposes of such an action, "the assessment of tax upon which the interest or lien of the United States is based shall be conclusively presumed to be valid." 26 U.S.C. § 7426(c).

 I conclude that as a general proposition, collateral attacks by third parties

should not be permitted under the instant circumstances.[10] If one considers the tax assessment as similar to a judgment, *see Bull v. United States,* 295 U.S. 247, 260, 55 S.Ct. 695, 699, 79 L.Ed. 1421 (1935), this prohibition is analogous to practices protecting the finality of judgments. *See Myers,* 647 F.2d at 604.

The prompt collection of taxes is an essential governmental function, and to allow third parties "to raise the entire history of the tax assessment in question in a full adversary proceeding would result in a substantial impediment to a process that is designed to be swift and efficient." *In re Campbell,* 761 F.2d at 1186 (action arising from order authorizing entry to effect levy).[11] I decline to erect such an impediment in this proceeding.

### B. Due Process

 The Judgment Creditors argue that "fundamental fairness" embodied in concepts of due process requires that they have an opportunity to review and raise objections to the IRS assessment against

---

**10.** The Second Circuit has directly considered the scope of the inquiry into the validity of tax liens by a third party under § 2410. *See Pipola v. Chicco,* 274 F.2d 909 (2d Cir.1960). *Pipola* held that in a § 2410 action, purchasers of a taxpayer's realty could not question the assessment which was the basis of a lien on the property. Shortly thereafter, the Second Circuit announced *Pipola* was overruled in an opinion which held that a taxpayer may challenge the merits of a tax assessment in an action to enforce tax liens. *United States v. O'Connor,* 291 F.2d 520, 527 (2d Cir.1961) (in suit under § 7403, assessment is presumptive but not conclusive). *O'Connor* created considerable confusion and some disagreement as to the extent to which it overruled *Pipola. Compare, e.g., Quinn v. Hook,* 231 F.Supp. 718, 721 (E.D.Pa.1964) (district court opinion in *Pipola* has survived as the correct interpretation of § 2410), *aff'd,* 341 F.2d 920 (3d Cir.1965) *and Cooper Agency, Inc. v. McLeod,* 235 F.Supp. 276, 284 (E.D.S.C.1964) (*O'Connor* court did not intend to overrule holding in *Pipola* that non-taxpayer could not commence action under § 2410 and inquire into merits of assessment), *aff'd,* 348 F.2d 919 (4th Cir.1965), *with Sonitz v. United States,* 221 F.Supp. 762 (D.N.J.1963) (plaintiff in § 2410 action may challenge merits of tax assessment) *and Falik v. United States,* 206 F.Supp. 181 (E.D.N.Y.1962) (third party may attack validity of lien, as distinct from assessment, under § 2410), *rev'd,* 343 F.2d 38 (2d Cir.1965).

The *Pipola* court had reasoned that a challenge to the assessment by a third party was prohibited because the taxpayer himself could not test the validity of the assessment in a government action to enforce under § 7403. While *O'Connor* undermined the stated rationale of the *Pipola* decision, it did not necessarily dictate a different result. In fact, although it declined to address the issue as applied to the same circumstances as *Pipola,* the Second Circuit has more recently refused to permit a taxpayer to initiate a suit under § 2410 to challenge the validity of a tax assessment underlying a lien. *Falik v. United States,* 343 F.2d 38 (2d Cir.1965) (§ 2410 was not meant to enable challenges to tax assessments); *cf. Remis v. United States,* 172 F.Supp. 732, 733 (D.Mass.1959) (Congress passed § 2410 to enable complete relief in certain circumstances, and not to create new jurisdiction in the federal courts to challenge tax assessments), *aff'd,* 273 F.2d 293 (1st Cir. 1960).

**11.** Section 2410 waives the sovereign immunity of the United States so as to permit its joinder as a party in certain cases where a lien is involved. It seems unlikely that this waiver extends to permit an attack upon the merits of a tax assessment upon which a lien is based; for it to do so would undermine the general policy of judicial noninterference with tax collection.

Johnson. Opp. to S.J. for U.S., docket no. 20, at 4; *see also* Mem. on Motion to Compel, docket no. 19, at 4. They do not cite any authority in support of this position.

The conclusion that the Judgment Creditors are precluded from contesting the validity of the tax assessment which gave rise to the federal tax lien does not create a due process problem. Their attachment lien fails to achieve priority precisely because it was too contingent to qualify as a property interest sufficient to displace another. *Cf. Security Trust*, 340 U.S. at 50, 71 S.Ct. at 113 (attachment is merely a *lis pendens* notice that a right to perfect a lien exists). It is the existence and superiority of the federal tax lien (not the legitimacy of the assessment) which results in their loss. The Judgment Creditors are entitled to a judicial determination of the nature and priority of the respective interests claimed by the other defendants, including the United States. However, due process does not require the underlying tax assessment to be opened to collateral attack by a third party. *Myers*, 647 F.2d at 604. In fact, allowing such a collateral attack makes no more sense than opening the judgment obtained by the Judgment Creditors to attack by one of the other defendants whose claim is junior.

Nothing precludes the Judgment Creditors from contesting the validity or superiority of the federal tax lien. As the *Myers* court noted with respect to contesting a levy, a person with a competing claim is

> entitled to show that the liens had not properly attached to the property in question, that the liens had been discharged through foreclosure and sale of the property, that the liens had been discharged through payment of the tax assessed, that his own interest in the property was superior in rank to the federal liens[ ], and that the government had failed to follow the procedural requirements of the [Federal Tax Lien] Act—in short, [he] was entitled to raise virtually any legitimate and available objection he might have had to the validity of the [lien]. What he could not do is challenge the merits of the tax assessment itself. . . .

647 F.2d at 603; *see also Arford v. United States*, 934 F.2d 229, 232 (9th Cir.1991) (procedural aspects of tax liens may be challenged in quiet title actions under § 2410).

The Judgment Creditors have not raised direct objections to the validity or superiority of the federal tax lien, *see*, Mem. on Motion to Compel, docket no. 19, at 3 (position of the U.S. is correct, assuming that Johnson "in fact owes or should owe the taxes assessed. Thus the only issue in this case is whether the taxes were properly assessed and are owed by the taxpayer. . . ."). I conclude that the objections of the Judgment Creditors to the motion for summary judgment by the United States are without merit.

**C. Notice**

■ Although one stated objection of the Judgment Creditors is that the Government failed to present evidence that they were notified of the assessment against Johnson, it is not clear what the Judgment Creditors think is required or on what basis. In order for a tax lien to arise, the IRS must notify the taxpayer concerning the assessment to make demand for payment. 26 U.S.C. § 6321. No other notification is necessary for the lien to be established, although a notice of the lien must be filed in order for the lien to be valid against certain persons. 26 U.S.C. § 6323. Once the lien is recorded in the manner required by § 6323(f), the appropriate priority attaches regardless of whether competing claimants have actual notice or knowledge of the lien. 25 Fed. Tax Coordinator 2d (Res. Inst. Am.) ch. V, § 6316 (*citing Dimmitt & Owens Fin. Inc. v. Unique Indust. Inc.*, 589 F.Supp. 14 (N.D.Ill.1983), *aff'd* 787 F.2d 1186 (7th Cir.1986)). In short, although the government has not presented any evidence that the Judgment Creditors were given notice of the assessment other than by means of the filing, none is required.

**D. Motion to Compel**

■ The document requests of the Judgment Creditors include such things as

"[t]he entire IRS file relating to any tax which forms the basis for any federal tax lien assessed against Raymond A. Johnson for taxes which are sought to be collected through payment of the funds held by the Plaintiff in this action." Request For Production No. 6. The United States objects to such requests as overbroad, burdensome, and not likely to lead to any relevant information which is not privileged. *Cf.* Fed.R.Civ.P. 26(b)(1) (information relevant to the subject matter of the action is generally discoverable).

In support of their motion to compel the production of these documents, the Judgment Creditors represent that they are necessary to permit them to review the IRS assessment against Johnson to determine if it is excessive or improper. Since these issues are entirely beyond the scope of the instant interpleader action and are of no possible consequence to it, the United States should not be compelled to produce the requested documents.

### III

For the reasons discussed above, I ALLOW the motion of the United States for Summary Judgment and DENY the motion of the Judgment Creditors to compel discovery. Furthermore, because the claim of the United States has been established as senior on the basis of uncontested facts, the summary judgment motions of the Commonwealth and the Judgment Creditors are DENIED to the extent they challenge the superiority of the lien of the United States. The remaining issues, bearing on priority relative to other parties, are moot because the federal assessment is sufficient to absorb the interpled surplus. The clerk shall enter judgment for the United States awarding the entire interpled amount.