**In re BAY STATE YORK COMPANY, INC., Debtor.**

**Jeffrey A. KITAEFF, Chapter 7 Trustee of Bay State York Company, Inc., and Jager, Smith, Stetler & Arata, P.C., Plaintiffs,**

v.

**MASSACHUSETTS BAY TRANSPORTATION AUTHORITY, Commonwealth of Massachusetts, and United States of America, Defendants.**

**Bankruptcy No. 91–10187–JNF.**
**Adv. P. No. 93–1102.**

United States Bankruptcy Court,
D. Massachusetts.

July 24, 1996.

George P. Eliopoulos, Washington, DC, for IRS.

Bruce F. Smith, Boston, MA, Jeffrey A. Kitaeff, Andover, MA, for plaintiffs.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

### I. INTRODUCTION

Two related matters are before the Court for determination: 1) the "Motion of Plaintiffs Jager, Smith, Stetler & Arata, P.C. and Jeffrey A. Kitaeff, Chapter 7 Trustee for Payment of Attorneys' Fees and Expenses Pursuant to Order Dated July 12, 1991," to which the United States of America objected; and 2) the "United States' Motion for Partial Summary Judgment," to which the Plaintiffs objected. Through the Plaintiffs' Motion, the law firm of Jager, Smith, Stetler & Arata, P.C. ("JSSA") seeks attorneys' fees and expenses in the amount of $25,347.18. JSSA asserts that it is entitled to compensation in connection with the collection of the Debtor's receivable from defendant Massachusetts Bay Transportation Authority (the "MBTA"). JSSA predicates its request upon an order entered on July 14, 1991 pursuant to which the Court, Gabriel, J., authorized both 1) the employment of JSSA as special counsel to the Chapter 7 Trustee for the purposes of collecting the receivables of Bay State York Company, Inc. ("BSY"), and 2) a compensation formula pursuant to which JSSA would be paid its expenses plus 25% of any amount collected as an attorneys' fee. In addition, JSSA and the estate would divide the remaining collected funds such that the estate would receive 33.3% and JSSA would receive 66.7% "until such time as JSSA's secured claim against the estate is satisfied in an amount to be determined by this Court."

The United States, through its partial summary judgment motion, seeks a determination that it has a priority tax lien with respect to a portion of the proceeds of the Chapter 7 Trustee's settlement with the MBTA, which proceeds are also claimed by the Commonwealth of Massachusetts and by JSSA. The proceeds are now being held in an interest-bearing escrow account.[1]

### II. BACKGROUND

On January 8, 1991, an involuntary Chapter 7 petition was filed against the Debtor. On February 1, 1991 the order for relief entered. On July 14, 1991, the Court entered an order allowing the Application for Order Authorizing Trustee to Employ Attorneys as Special Counsel and to Recognize Secured Claim. Accordingly, on that date, the Court recognized that JSSA held a prepetition secured claim in the amount of $297,694.44 and authorized the retention of JSSA on the terms outlined by the Plaintiffs in their motion which is now before the Court.[2] The Court notes that the Application for Order Authorizing Trustee to Employ Attorneys as Special Counsel and to Recognize Secured Claim did not disclose the existence of any dispute regarding the priority of liens on the Debtor's receivables. Additionally, the Court notes that the United States did not object to JSSA's retention as special counsel to the Chapter 7 Trustee or to the terms of the firm's payment.

On February 16, 1993, the Chapter 7 Trustee commenced an action against the MBTA seeking turnover of $163,407.94, representing the balance due BSY under a contract with the MBTA. The Trustee subsequently amended the complaint, joining

---

**1.** At the July 27, 1995 hearing at which the parties agreed to the creation of an escrow, this Court made no determination as to whether the settlement proceeds were property of the estate.

**2.** In the Application for Order Authorizing Trustee to Employ Attorneys as Special Counsel and to Recognize Secured Claim, the Trustee disclosed the following:

At the time that the involuntary petition was filed, JSSA was a secured creditor of BSY by virtue of the execution and filing of ... UCC Financing Statements.... JSSA is owed $297,694.44 for its prepetition services to debtor.... JSSA has represented BSY as general corporate and litigation counsel over several years....

JSSA as a party-plaintiff and naming the United States, the Commonwealth of Massachusetts and Park L. Davis Company as additional defendants. On November 19, 1993, this Court authorized the Plaintiffs and the MBTA to compromise the Plaintiffs' claim against the MBTA in the amount of $94,422.35, and, on June 6, 1995, the Court granted the "Joint Motion of Plaintiffs and Defendant Massachusetts Bay Transportation Authority to Dismiss Amended Complaint as to Defendant Massachusetts Bay Transportation Authority," leaving the priority of liens dispute among JSSA, the United States and the Commonwealth of Massachusetts unresolved.[3]

Following the entry of the order on June 6, 1995, the United States filed a Motion to Alter or Amend the Court's Order, objecting to any determination that the funds collected from the MBTA be "considered property of the estate for the sole purpose of generating fees and costs to deplete the fund." At approximately the same time, the Plaintiffs filed a Motion for Leave to Amend First Amended Complaint, seeking authority to amend their complaint to obtain a ruling that this Court has the authority to direct the United States to apply payments and credits against tax assessments that were the subject of its first and second Notices of Federal Tax Lien. The Court heard both motions on July 27, 1995, at which time the Court granted the Plaintiffs' motion and, with respect to the motion of the United States, ordered the United States and the Trustee to establish an escrow account for the settlement funds paid by the MBTA.

The Plaintiffs filed their Second Amended Complaint and served it on Counsel to the Commissioner, Massachusetts Department of Revenue, and on the Tax Division of the Department of Justice. The Second Amended Complaint contains the following five counts: Count I—Determination of Priority of Lien, through which the Plaintiffs seek a determination that "JSSA has a perfected security interest in the proceeds of the MBTA Contract Balance which has priority

over the lien of the United States in an amount to be determined by the court;" Count II—Determination of Validity of Lien through which the Plaintiffs allege that a Notice of Levy and any rights accruing to the Massachusetts Department of Revenue by virtue of the service of the Notice of Levy on December 14, 1990 are voidable preferences; Count III—Determination of Validity of Lien, through which the plaintiffs seek identical relief as in Count II with respect to a Notice of Lien filed by the Commonwealth of Massachusetts, Department of Revenue; Count IV—Determination of Validity of Lien, through which the Plaintiffs allege that the Notice of Federal Tax Lien served on December 4, 1990 constituted a voidable preference; and Count V—Determination that the filing of a Notice of Lien on May 1, 1991 was a violation of the automatic stay.

■ The Commonwealth failed to file an answer to the Second Amended Complaint, although it answered the First Amended Complaint. However, the Plaintiffs have not moved to default the Commonwealth and did not address the priority of the Commonwealth's liens in their papers filed with the Court. The United States filed an Answer to the Second Amended Complaint and, within one month, filed the Motion for Partial Summary Judgment. In its motion, the United States failed to identify the Counts of the Second Amended Complaint upon which it seeks summary judgment. Based upon the pleadings, the Court presumes the United States is seeking judgment in its favor on Counts I and IV. Like the United States, the Plaintiffs failed to reference specific Counts of the Second Amended Complaint in their opposition to the partial summary judgment motion. Moreover, in response to the Motion for Partial Summary Judgment and the Memorandum of the United States in support of the Motion for Partial Summary Judgment, the Plaintiffs wholly failed to address Count IV. Accordingly, and in view of the provisions of the Bankruptcy Code and case law establishing that statutory liens are not voidable as preferences, 11 U.S.C.

---

**3.** Park L. Davis Company was defaulted on October 19, 1993, having failed to answer or otherwise defend.

§ 547(c)(6), the Court finds that the Plaintiffs have waived the relief sought through Count IV.

The following pertinent facts are reflected in the various motions filed by United States and the Plaintiffs. The Court notes in this regard that neither the Plaintiffs nor the United States provided the Court with a clear statement as to the nature, extent and priority of liens as of the petition date and with information about the status of this case and whether there will be funds sufficient to pay all administrative claims in full and pay a dividend to unsecured creditors.

At the commencement of the case, JSSA claimed a perfected security interest in BSY's receivables in the total sum of $297,-694.44 and a first priority security interest in the receivables in the sum of $238,612.24 as of September 12, 1990, the date of the filing of the first Notice of Federal Tax Lien ("NOFTL") (Application for Order Authorizing Trustee to Employ Attorneys as Special Counsel and to Recognize Secured Claim at ¶ J; Second Amended Complaint at ¶ 11; United States' Memorandum, Statement of Facts). The current balance owed to JSSA with respect to its security interest is $5,755.60, and, according to JSSA, its security interest will be extinguished "vis-a-vis the United States" if that sum is paid to it pursuant to the settlement agreement with the MBTA.[4] Accordingly, JSSA seeks a reallocation of payments made by BSY to the Internal Revenue Service (the "IRS") pursuant to the NOFTLs that secured assessments made before JSSA perfected its security interest in the accounts receivable. The following chart summarizes the federal tax information available to the Court:

| Tax Assessment Date | Assessment Amount | Qtr. | NOFTL Date | NOFTL Amount | Assessment Balance (5/9/92) [5] |
|---|---|---|---|---|---|
| 3/26/90 | $503,985.93 | 4/89 | 12/4/90 | $155,449.10 | $100,029.54 |
| 6/11/90 | $493,555.16 | 1/90 | 9/12/90 | $311,486.09 | $411,229.27 |
| 9/17/90 | $366,975.71 | 2/90 | 12/4/90 | $155,449.10 | $19,672.31 |
| 12/17/90 | $274,943.56 | 3/90 | 5/1/91 | $66,917.98 | $85,396.06 |
| TOTAL | $1,639,460 | — | — | $616,327.18 | — |

In addition, the Commonwealth of Massachusetts made assessments against BSY on February 15, 1990, April 30, 1990, July 31, 1990 and October 31, 1990 for the fourth quarter of 1989 and the first three quarters of 1990 respectively.

The United States admits that payments and credits reported after September 12, 1990, the date of the first NOFTL totalled $511,824.84, which payments and credits are more than the amount of the first two Notices of Federal Tax Lien ($466,935.10).

### III. POSITIONS OF THE PARTIES

#### A. JSSA

JSSA states the following: 1) the tax allocation issue raised by the Second Amended Complaint is irrelevant to its Motion for Payment of Attorneys' Fees and Expenses because the allocation will have no bearing on the amount of the fees and expenses it seeks, which is determined by the formula approved by Judge Gabriel; 2) from the $94,-422.25 recovered from the MBTA, JSSA is entitled to $2,322.16 in expenses and 25% or $23,025.02 in fees; 3) distribution of the $69,-075.07 balance in settlement proceeds depends upon the tax payment reallocation is-

---

**4.** The Court presumes this statement means that the current balance of JSSA's first priority secured claim is $5,755.60 and that JSSA still holds a potentially secured claim with respect to the $59,082.20 difference between its original priority lien of $238,612.24 and its total secured claim of $297,694.44.

**5.** As of January 31, 1996, the United States was owed $32,429.27 with respect to the March 26, 1990 assessment; $528,932.03 with respect to the June 11, 1990 assessment; $132,456.55 with respect to the September 17, 1990 assessment; and $103,582.42 with respect to the December 17, 1990 assessment.

sue. JSSA explains the tax allocation issue as follows:

> Unless there is such a reallocation the estate will not receive any further payments from JSSA's efforts due to the fact that the amount of the intervening liens of the United States and the Commonwealth of Massachusetts are [sic] greater than the potential collections from BSY's creditors because the Trustee's ability to recover is dependent upon JSSA's lien.

Memorandum in Opposition to the Motion for Partial Summary Judgment at pp. 4–5. JSSA also states the following:

> If as a result of a tax payment reallocation, JSSA's security interest vis-a-vis the United States' tax lien is deemed to be greater than $69,075.07, then two-thirds of that amount, or $46,050.05 will be paid to JSSA, and the remaining one-third, or $23,025.02, will go to the Trustee as an asset of the estate pursuant to Judge Gabriel's order.... If ... the court does not reallocate any tax payment such that JSSA's security interest is not increased vis-a-vis the United States' tax lien, and JSSA's security interest is satisfied out of the $69,075.07 balance, then the remainder of those funds would inure first to the estate, to the extent of one-third of the amount needed to satisfy JSSA's security interest, and second to the benefit of the United States as the next most senior lienholder whose rights attached prior in time to those of the Trustee.... [A]ny balance of the MBTA settlement proceeds that are subject to the United States' tax lien should be surcharged to compensate JSSA, inasmuch as JSSA would have recovered those funds for the United States' benefit.

Motion for Payment of Attorneys' Fees and Expenses at ¶¶ 12–13.

JSSA relies on 11 U.S.C. § 506(c) for the proposition that it is entitled to surcharge the settlement proceeds, and it principally relies upon the case of *United States v. Energy Resources Co., Inc.,* 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990), and 11 U.S.C. § 105 for the proposition that this Court has the authority to reallocate tax payments and credits.

### B. The United States

The United States rejects JSSA's argument that there is authority for this Court to order the reallocation of "tax payments that were applied to tax periods that are covered by liens inferior to the pre-petition lien of ... JSSA ... and then have such payments reapplied to tax periods covered by liens that are superior to the lien of JSSA." It notes that pursuant to 26 U.S.C. § 6321 the Government has a lien for unpaid taxes on "all property and rights to property of a taxpayer" that arises on the date of assessment and continues until the assessment is fully satisfied. The United States adds that this lien is valid as to third parties *only* after being recorded by the filing of a notice of lien pursuant to 26 U.S.C. § 6323(f).[6] *See Id.* § 6323(c). *See also Middlesex Savings Bank v. Johnson,* 777 F.Supp. 1024, 1027 (D.Mass. 1991). The federal tax lien secures the principal tax obligations as well as unassessed interest, penalties and other additions. *Johnson,* 777 F.Supp. at 1027. Finally, the United States argues that there is no standing, no waiver of sovereign immunity and no jurisdiction for the reapplication of BSY's tax deposits and payments made by BSY and applied by the IRS years before the bankruptcy petition was filed, citing *United States v. Pepperman,* 976 F.2d 123 (3d Cir.1992); *In re Simms,* 177 B.R. 537 (Bankr.N.D.Ohio 1994).

### IV. DISCUSSION

 The Court finds the position advanced by JSSA to be opaque at best. According to the first sentence of its rationale appearing in its Motion for the Payment of Fees and Expenses, it would appear that if this Court were to order the reallocation of tax payments, then JSSA would be paid more money toward the satisfaction of the total amount of its claim of $297,694.44 and ap-

---

**6.** Between the Commonwealth of Massachusetts and the United States, the United States concedes that the Commonwealth's liens arose on the date of assessment and that priority must be given to the Commonwealth's liens to the extent the assessments preceded those of the United States (i.e., the February 15, 1990 assessment for the fourth quarter of 1989).

proximately $23,000.00 would pass through to the estate to the United States, resulting in a commission for the Chapter 7 Trustee and less money for the United States.[7] Unfortunately, the balance of JSSA's rationale for ordering reallocation is incomprehensible. Even assuming that JSSA would be entitled to expenses and 25% of the funds collected as attorneys' fees plus payment of $5,755.60 to satisfy the balance of its priority lien, the Court, in view of 11 U.S.C. § 724(b)–(d), is unable to discern a principled argument that JSSA would be entitled to one-third of the balance of the funds that would be part of the bankruptcy estate, thereby priming the United States' senior lien to satisfy the balance of its claim.

In any event, the Court finds that the legal authority cited by JSSA in support of its reallocation request is unpersuasive. The Court agrees with the analysis of the United States. *Energy Resources* is inapplicable to the instant case. In the first place *Energy Resources* involved a Chapter 11 case in which the United States Supreme Court indicated that a deemed involuntary payment of employment taxes made by a Chapter 11 debtor pursuant to a plan of reorganization could be designated toward the payment of trust fund taxes by the debtor if the "designation is necessary to the success of a reorganization plan." Thus, *Energy Resources*

considered the future payment of taxes through a Chapter 11 plan, not the reallocation of taxes made years before the filing of a bankruptcy petition. Because *Energy Resources* is inapposite, the reallocation order requested by JSSA would appear to be an "undue expansion" of *Energy Resources, Simms,* 177 B.R. at 540, without any "overriding necessity" in the context of this Chapter 7 case where there has been no showing how the reallocation will benefit creditors other than JSSA. *See In re Craft Aviation Service, Inc.,* 187 B.R. 703, 710 (Bankr. N.D.Okla.1995).

■ In the instant case, although not expressly stated, it would appear that BSY did not designate how its tax payments were to be credited to its outstanding tax obligations. Accordingly, the IRS was free to apply the payments to whichever liability of the taxpayer it chose. *Sotir v. United States,* 978 F.2d 29, 30 (1st Cir.1992). The Plaintiffs have failed to establish that they have standing to contest the allocation under *Sotir.* In that case, the Court rejected the claim of responsible officers that the IRS had failed to apply payments to the corporation's trust-fund tax liability. The court refused to overturn the line of decisions allowing the IRS, absent some direction from the taxpayer, to

---

7. To the extent that the United States asserts that the MBTA settlement proceeds are not property of the estate, the Court unequivocally rejects that argument. The MBTA owed the Debtor money at the time of the commencement of the case as a result of a pre-petition construction contract. Accordingly, the estate's claim against the MBTA and the settlement proceeds are property of the estate as that concept is defined at 11 U.S.C. § 541(a). Moreover, 11 U.S.C. 724(b) provides the following:

> (b) Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title and that secures an allowed claim for a tax, or proceeds of such property, shall be distributed—
> (1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;
> (2) second, to any holder of a claim of a kind specified in section 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;

> (3) third, to the holder of such tax lien, to any extent that such holder's allowed tax claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;
> (4) fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien;
> (5) fifth, to the holder of such tax lien, to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection; and
> (6) sixth, to the estate.

11 U.S.C. § 724(b). "The effect of section 724(b) is to treat a tax lien as a claim ahead of the priority for taxes (now section 507(a)(8)) and after the other priorities under section 507(a) rather than as a secured claim. The result is to leave senior and junior lienholders and holder of unsecured claims undisturbed." 4 L. King, *Collier on Bankruptcy,* ¶ 724.03 at 724–4 (15th ed. 1996).

apply payments to whichever of the taxpayer's liabilities it wishes. 978 F.2d at 32. The relief requested by the JSSA essentially asks this Court to do just that. Under the reasoning of *Sotir*, this Court declines the invitation.

## IV. CONCLUSION

In accordance with the foregoing, the Court grants the Motion of Plaintiffs Jager, Smith, Stetler & Arata, P.C. and Jeffrey A. Kitaeff, Chapter 7 Trustee for Payment of Attorneys' Fees and Expenses Pursuant to Order Dated July 12, 1991 and allows JSSA attorneys' fees and expenses in the total sum of $25,347.18. The Court denies JSSA's request for any additional fees pursuant to 11 U.S.C. § 506(c) as such fees would be duplicative of the payment granted herein. The Court grants the Unites States' Motion for Partial Summary Judgment. The Court shall schedule a trial at its earliest convenience to dispose of the remainder of the outstanding matters in this case.