### In re T. CRAFT AVIATION SERVICE, INC., Debtor.

**Bankruptcy No. 92–02948–W.**

United States Bankruptcy Court, N.D. Oklahoma.

May 10, 1995.

Scott P. Kirtley, Trustee, Tulsa, OK.

A. William Jacobus, Tulsa, OK, for debtor.

Joseph Raymond, Tax Division, Dept. of Justice, Washington, DC, for U.S.

### ORDER GRANTING UNITED STATES OF AMERICA'S "MOTION TO ALTER OR AMEND COURT'S JUNE 2, 1994 ORDER OF INSTRUCTION" AND DENYING DEBTOR'S REQUEST FOR SANCTIONS

MICKEY DAN WILSON, Chief Judge.

On June 13, 1994, the United States of America ex rel. Internal Revenue Service

("IRS") filed its "Motion to Alter or Amend Court's June 2, 1994 Order of Instruction." This matter was eventually taken under advisement. Upon consideration of the record herein, and pursuant to F.R.B.P. 9014 and 7052, this Court finds, concludes and orders as follows. Procedural history of the matter is included in "Findings of Fact."

### FINDINGS OF FACT

On August 13, 1992, Thomas Henry Craft and his wife Callvina Janette Craft ("Mr. Craft;" "Mrs. Craft;" "the Crafts") filed their joint voluntary petition for relief under 11 U.S.C. Chapter 7 in this Court, commencing Case No. 92–02870–W ("the individual case"). According to schedules and statements filed therein, the Crafts owned the stock and were officers of a corporation called T. Craft Aviation Service, Inc. ("T–Craft"). On August 19, 1992, T–Craft by its president Mr. Craft filed its own voluntary petition for relief under 11 U.S.C. Chapter 7 in this Court, commencing this Case No. 92–02948–W ("the corporate case"). A. William Jacobus, Jr. ("Jacobus") appeared as attorney for the individual and corporate debtors. Scott P. Kirtley was appointed Trustee ("the Trustee") of the corporate case.

The Trustee duly liquidated T–Craft's assets. Meanwhile, claims were filed by various creditors, including a priority claim by the State of Oklahoma, ex rel. State Insurance Fund for $347.00, and a priority claim by the United States of America, ex rel. Internal Revenue Service ("IRS") for $21,248.65. Neither priority claim was objected to; and both were deemed allowed pursuant to 11 U.S.C. § 502(a).

On July 14, 1993, the Trustee filed his ". . . Final Report and Proposed Distribution" in the corporate case. Therein the Trustee reported that the estate had assets available for distribution in the amount of $12,187.94; that administrative expenses totalled $1,575.57; that "[t]here are two priority claims in the amount of $21,595.65, no secured claims and twenty-six unsecured claims in the amount of $54,557.94;" and further as follows:

If fees and expenses are approved, there should be the sum of $10,612.37 for distri-

bution to the priority creditors or 87% of the total funds recovered. The priority creditors will receive 49% of their claims. As to Claim No. 19 of the Internal Revenue Service, the Debtor has requested that this Court order that the funds paid by the Trustee to the Internal Revenue Service be designated to the trust fund portion of the Internal Revenue Service claim then to interest and penalty. There will be no funds available for distribution to the unsecured creditors,

final report p. 3 ¶ 7.

Also on July 14, 1993, the Trustee filed his "Application for Approval and Payment of Attorney Fees for Trustee," wherein he requested approval and payment of $624.00 in fees and $19.06 in expenses incurred by the Trustee acting as his own attorney. Said application made no mention of IRS' claim or of any "designat[ion]" of payment thereon.

On July 21, 1993, the Clerk of this Court ("the Clerk") issued her "Notice of Filing of Trustee's Final Report and Accounting, of Hearing on Applications for Compensation and of Hearing on Abandonment of Property by the Trustee." This notice stated the total assets available, total priority claims and total "general" claims, but did not specify any particular claim or treatment thereof, and made no mention of any "designat[ion]" of funds which might be paid to IRS on its priority claim. The notice did contain the following language:

At the hearing the Trustee will present an accounting of funds and activities, together with an analysis of the Claims filed, and a proposed distribution of funds. Parties in interest are hereby given notice that they are to make any inquiry relating to these matters as they deem necessary and proper and are hereby given notice that any objections to the proposed distribution shall be made at or before the time fixed forhearing [sic]. Objections not made prior to conclusion of the hearing shall be forever barred,

notice p. 2 (on reverse side of p. 1).

No objections to the administrative-expense claims or to the Trustee's final report were filed. On August 26, 1993, this Court

entered its "Order Approving Allowance of Compensation and Administrative Costs." This order also purported to direct payment of priority claims, and further directed as follows:

Additionally, as to Claim No. 19 of the Internal Revenue Service, the funds paid by the Trustee to the Internal Revenue Service be designated to the trust fund portion of the Internal Revenue Service claim then to interest and penalty,

order 8/26/93 p. 2. This order is sometimes referred to hereinafter as "the allocation order."

On November 15, 1993, the Trustee filed his "Final Account and Request for Discharge." Therein the Trustee stated that he had completed disbursements and emptied the estate. On November 17, 1993, this Court entered a "Final Decree" discharging the Trustee and directing that the corporate case be closed.

Six months later, on May 13, 1994, T–Craft by its attorney James A. Hogue, Sr. ("Hogue") filed its "Application to Reopen Chapter 7 Case." T–Craft alleged that

1. On August 26, 1993 this Court entered an Order concerning claims and costs.

2. The Order of August 26, 1993 directed the payment of funds to the Internal Revenue Service, and directed the apportionment of same.

3. Said funds have been paid to the I.R.S.

4. The I.R.S. has refused to apportion the same according to the Order of August 26, 1993.

5. This refusal to honor the Order of the Court has caused and will cause substantial financial harm to the president of [T–Craft].

6. [T–Craft] needs to file certain pleadings in the main case to seek guidance concerning the interpretation of said August 26, 1993 Order ...,

motion to reopen p. 1 ¶¶ 1–6.

On May 20, 1994, the Court re-opened the case. On May 23, 1994, T–Craft filed a "Request For Instructions," which among other things alleged that

The [IRS] continues to proceed with collection activities against a responsible party of [T–Craft] ... Such activity has caused said parties to engage attorneys to redress this situation,

request pp. 1–2 ¶ 4. The Court set a hearing on T–Craft's "Request for Instructions" for June 1, 1994 at 10:30 o'clock a.m. Notice of this hearing was given by Hogue and by the Court to various persons as noted below; but no notice was sent to the United States Attorney General ("the Attorney General") as required by F.R.B.P. 7004(b)(4).

At hearing on June 1, 1994, the Crafts and their attorney appeared, but the Trustee and any representative of IRS appeared not. According to a written "... Order of Instruction" filed June 2, 1994, the result was as follows:

[T]he Court, being advised that [IRS] fails and refuses to apply the distribution paid to [IRS] as ordered by the Court, and the Court, being apprised of the length of time involved ... (final report of the Trustee being heard August 19, 1993 and the Court's approval of the same on August 26, 1993), further concludes that [IRS] is estopped from challenging this Court's Order and, accordingly,

IT IS THEREFORE ORDERED that the IRS shall, forthwith, comply with the previous Orders of this Court and apply the distribution received by [IRS] from the Trustee to the Trust Fund portion of their claim and then to interest and penalties,

order 6/2/94 pp. 1–2.

On June 13, 1994, IRS filed its "Motion to Alter or Amend Court's June 2, 1994 Order of Instruction." Therein IRS stated that T–Craft's "attorney, Mr. James Hogue, was informed of the IRS's position ... prior to" July 14, 1993, IRS' motion p. 3 ¶ 4; that in spite of Hogue's knowledge of a potential contested matter, "[t]he [IRS] and the Attorney General were never served with a copy of" the Trustee's final report and that "[t]he IRS, the United States Attorney, and the Attorney General have only recently received a copy of" the allocation order of August 26, 1993, id. pp. 1–2 ¶ 2; that "Debtors have no right to allocate" distributions on tax claims

to trust fund taxes as was done in this case, *id.* p. 1 ¶ 1; that the "August 26, 1993 and June 2, 1994 orders be amended to allow the IRS to apply distributions from the estate ... as it so chooses," *id.* p. 3 prayer (a); and that IRS had a right to a proper opportunity to be heard on this issue, *id.* ¶ 4.

The Court set IRS' motion for hearing on June 30, 1994, and directed the Trustee to personally appear.

On June 21, 1994, the Trustee filed a brief "Response ..." to IRS' motion, and pointed out only that notice of the hearing on final report had been mailed by the Clerk to all listed creditors. On June 22, 1994, T–Craft filed a "Motion to Strike ... or alternatively, Response and Objection to ..." IRS' motion. T–Craft asserted that notice of the hearing on final report was mailed to all listed creditors, including

> Chief, Office of Special Litigation, Tax Division, U.S. Department of Justice, P.O. BOX 7238, Washington, D.C. 20044 ... I.R.S. District Director, P.O. BOX 66, Oklahoma City, OK 73101; and ... United States Attorney, Room 3600, U.S. Courthouse, 333 West Fourth Street, Tulsa, Oklahoma 74103,

T–Craft response p. 2 ¶ 5; that T–Craft gave notice of the hearing on its request for instructions to

> Catherine DePew Hart, Asst. U.S. Attorney, 333 W. Fourth St., Room 3900, Tulsa, OK 74103, and to ... Internal Revenue Service, Chief, Special Procedures, 55 N. Robinson, Stop 5020, Oklahoma City, OK 73102–9229,

*id.* p. 3 ¶ 15; that this Court gave additional notice to the same Assistant U.S. Attorney and to one "Jeanne Foxx, IRS Special Procedures," *id.* pp. 3–4 ¶ 16, pp. 4–5 ¶ 22; that IRS, "since it failed to appear at the hearing on the final [report] ... although duly noticed of the same by the Clerk ... must be deemed to have consented by default, to the proposals of the Trustee," *id.* p. 3 ¶ 11; that IRS defaulted again at the hearing on T–Craft's request for instructions on June 1, 1994, and is estopped from making any further challenge, *id.* p. 4 ¶ 19; and that IRS "is in violation of not one but two Orders, to-wit: the ... August 26, 1993 Order, and the Or-der estopping the I.R.S. ... dated June 2, 1994," *id.* p. 5 ¶ 23.

At hearing on June 30, 1994, there appeared the Trustee, the Crafts and "their attorney ... Hogue," and two attorneys for IRS, order filed 6/30/94. After hearing "arguments of counsel and statements of admitted facts," the Court directed the filing of briefs "on or before July 11, 1994, after which time the Court will consider this matter submitted for decision," *id.* The Court directed the parties' attention to statements by Justice Thomas for the U.S. Supreme Court in *Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

On July 8, 1994, IRS filed a "... Memorandum of Law ..." which emphasized that the notice of final report *"did not mention that the [T]rustee sought an order directing the [IRS] to apply payments to the trust fund portion of its employment tax claims,"* IRS' memo p. 2 ¶ 4 (emphasis original); but which admitted that "[IRS], on being informed of the existence and contents of the August 26, 1993 order, refused to comply with same," *id.* ¶ 6.

On July 11, 1994, T–Craft filed its "Supplemental Brief," which asked rhetorically "Where was the [IRS] on June 1, 1994;" accused IRS of "disregard[ing]" this Court's orders; and quoted Justice Thomas' statement that "Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality," T–Craft's brief unnumbered pp. 2–3 ¶¶ 7, 11–12, quoting but not citing *Taylor v. Freeland & Kronz,* 503 U.S. p. 643, 112 S.Ct. p. 1648, 118 L.Ed.2d p. 287.

On July 19, 1994, IRS filed its "... Supplemental Memorandum ...," which stated that the Trustee "admitted" that the August 26, 1993 order *"was not* served upon the [IRS], the United States Attorney, nor the Attorney General," supp. memo. p. 1 (emphasis original); that "[n]either counsel for the United States nor the [IRS] ever intended to ignore the Court's August 13, 1994 order [sic; August 26, 1993 order?]," *id.* p. 2; that "[a]dmittedly, there was a several week lag between the time negotiations between the [IRS] and

Mr. Hogue reached an impasse and the matter was referred to the Department of Justice, Tax Division," *id.*; and further as follows:

The United States requests the Court to also examine the actions of [the Trustee] and Hogue in this matter. Although the August 13, 1993 order [sic; August 26, 1993 order?] with the applications of payments language was secured by [the Trustee], its only benefit was to Mr. and Mrs. Craft who are the owners of [T–Craft]. What interest would a Chapter 7 trustee have in securing a personal benefit for the owners of debtor? The United States suggests that logically Mr. Hogue, debtor's counsel, was the moving force behind this order. Clearly, the application of payments issue was one which should have been settled by motion with service upon the U.S. Attorney, Attorney General, and [IRS]. See Bankruptcy Rule 9014.

Although the undersigned is reluctant to make allegations of this nature, the facts lead one to believe that [the Trustee] and Hogue sought to deny the United States an opportunity to be heard by slipping language into the trustee's Final Report ... The facts indicate that the trustee asked the Court to sign an order [a]ffecting a tax claim of the United States knowing that the United States *was not* given notice that he sought to [a]ffect its claim. Furthermore, after securing an order adverse to the United States, [the Trustee] and Hogue failed to serve it upon the Government until eight months after the fact apparently hoping that, after the lengthy time lapse, it would be too late for the Government to oppose the order.

If there is a logical explanation for the egregious conduct outlined above, [the Trustee] and Hogue should come forward and explain same,

supp. memo. pp. 2–3 (emphasis original). This document was signed for Stephen C. Lewis, United States Attorney for this Federal District, by Joseph Raymond, Senior Trial Attorney, Tax Division, Dept. of Justice in Washington, D.C. ("Raymond").

On July 26, 1994, T–Craft filed its "... Response to United States' Supplemental Memorandum ... and ... Request for Sanction ..." T–Craft stated that IRS' supplemental memorandum was filed later than permitted by this Court's order of June 30, 1994; and in any case constituted "libel and slander" which was "an outrage and injustice," T–Craft's resp. unnumbered pp. 2–3 ¶¶ 5, 8; and should be stricken, or else sanctions visited on the Department of Justice attorney who signed the same. On July 29, 1994, the Trustee filed his own "... Response to United States' Supplemental Memorandum ...," which asserted that the Trustee "was not aware of ... Hogue's involvement in this matter" and dealt only with Jacobus "until after the bankruptcy case was closed," Trustee's resp. p. 1 ¶ 2; and denied that the Trustee would ever " 'slip' language in[to] a pleading," *id.* ¶ 3.

## CONCLUSIONS OF LAW

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (O), 11 U.S.C. §§ 105, 726(a)(1).

This dispute arose from the filing of the Trustee's final report pursuant to 11 U.S.C. § 704(9). In his final report the Trustee, having liquidated the assets of the bankruptcy estate, set forth his proposed distribution of the proceeds pursuant to 11 U.S.C. § 726. It is undisputed that IRS has a priority claim pursuant to § 726(a)(1). A "summary of the [T]rustee's final report" is mailed to all creditors pursuant to F.R.B.P. 2002(f)(8), together with notice of any hearing thereon. Likewise, notice of any requests for payment of fees to the Trustee and his attorney is mailed to all creditors pursuant to F.R.B.P. 2002(a)(7). These notices do not apprise creditors of all details of a final report and proposed distribution. The notices herein gave no hint of anything unusual in these normally routine matters, or that any particular condition would be placed on distribution to IRS or any other creditor.

■ But what the Trustee and the Crafts' attorney (whether Jacobus or Hogue) proposed to do to IRS was far more than mere "distribution to a priority claimant" pursuant to § 726(a)(1). The Trustee and the Crafts' attorney sought an order in the

nature of a mandatory injunction. A request for injunctive relief should be brought by formal complaint commencing an adversary proceeding, F.R.B.P. 7001(7) and resulting in a decree. Instead of complaint and decree, it is possible that a motion, resulting in an order, might have been adequate. The choice between motion practice and adversary proceeding in seeking a particular type of relief is not always clear-cut but can be "a matter of degree," *In re Vance*, 120 B.R. 181, 191–192 (B.C., N.D.Okl.1990). But in this instance, *at least* a separate, clearly identifiable motion for order directing allocation of distribution was called for, F.R.B.P. 9013, 9014. To bury a request for injunctive relief in an otherwise-innocuous final report, and then to place the injunction itself in a misleadingly-titled order awarding administrative expenses, is clearly improper.

 It is true that IRS refused to follow an order of this Court merely because IRS disagreed with it. This Court does not intend its orders to be obeyed merely at the option of the recipient. But it is also true that notice of the original proposal to order IRS to allocate what it received in distribution was given in an unlawful and unreasonable manner, so that the pendency of the proposal to allocate was effectively (whether or not deliberately) concealed from IRS; and further that notice of the debtor's request for instructions (i.e., to enforce the original allocation order) did not comply with F.R.B.P. 7004(b)(4). Under the circumstances, the Court concludes that the Trustee and T-Craft and its principals may not insist that the orders of August 26, 1993 and June 2, 1994 must bind IRS, either by their own force or by estoppel, by virtue of lack of proper notice to IRS of issues to be determined and/or of the hearings themselves.

Accordingly, there is no bar to this Court's consideration of IRS' motion to alter or amend such orders. And, since the facts are undisputed and the matter already fully briefed, there is no need to convert the present contested matter to an adversary proceeding. It appears proper to this Court to reach through this procedural fracas to the merits.

 In *U.S. v. Energy Resources Co., Inc.*, 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990), the Bankruptcy Court confirmed a Ch. 11 plan which required the debtor-in-possession to pay tax debts in 6 years, and provided incidentally "that the payments would be applied to extinguish all trust fund tax debts 'prior to the commencement of payment of the nontrust fund portion' of the tax debts," 495 U.S. p. 547, 110 S.Ct. p. 2141, 109 L.Ed.2d p. 585. The Bankruptcy Court held that such order "was necessary to ensure the success of the reorganization," 495 U.S. p. 548, 110 S.Ct. p. 2141, 109 L.Ed.2d p. 585. IRS appealed; the lower courts affirmed; and so did the Supreme Court. IRS argued that, according to "IRS' own rules," 495 U.S. p. 548, 110 S.Ct. p. 2141, 109 L.Ed.2d p. 585, a tax debtor who "voluntarily" makes payments can designate how the payments are applied, but one who "involuntarily" pays cannot so designate; payments under Ch. 11 plans are considered "involuntary;" and IRS applies "involuntary" payments first to non-trust-fund taxes. According to the Supreme Court, it did not matter whether payments were "voluntary" or "involuntary." Either way, the Bankruptcy Court had "broad authority to modify creditor-debtor relationships," 495 U.S. p. 549, 110 S.Ct. p. 2142, 109 L.Ed.2d p. 586, which included "issuing orders of the type ... here" as part of "residual authority to approve reorganization plans," 495 U.S. pp. 549, 550, 110 S.Ct. p. 2142, 109 L.Ed.2d p. 586. The Supreme Court made repeated mention of *both* this Bankruptcy Court's specific finding of "necess[ity] to ensure the success of the reorganization" *and* the general principle of "broad ... residual" authority in every Bankruptcy Court. The Supreme Court never stated that "orders of the type here" were permissible *only* where "necessary to ensure the success of [a] reorganization." A fair reading of the case is that Bankruptcy Courts may make allocation orders in various circumstances as part of their "broad authority to modify debtor-creditor relationships," *for example* to ensure the "success of a reorganization."

 Although the Supreme Court's opinion supports the "broad authority" of Bankruptcy Courts, it endorses a questionable use

of such authority. When trust fund taxes are not paid by a corporate employer, that corporation's principals and other "responsible parties" are personally liable for such unpaid taxes. When the corporate employer enters Ch. 11 and constructs a plan like the one in *Energy Resources,* the corporate employer effectively shifts the burden of paying the taxes from the corporate principals and other "responsible parties" to the general unsecured creditors. By insisting that Ch. 11 payments be applied first to non-trust-fund taxes, IRS puts the burden of paying trust-fund taxes back where it belongs, on the corporate principals and other "responsible parties" who were responsible for the nonpayment of trust-fund taxes in the first place. By objecting to confirmation of plans which put the tax burden on the wrong parties, IRS may threaten to destroy a business and put its employees out of work. But such threat may also induce the corporate principals to contribute some of their own assets to help the reorganized debtor pay off its tax debts. By permitting interference with IRS' strategy, *U.S. v. Energy Resources, Inc.* permits the creation of tax-dodgers' havens.

Circuit-level cases applying *U.S. v. Energy Resources, Inc.* have read it strictly and applied it narrowly, so as to favor IRS as against corporate debtors-in-possession and their tax-dodging principals. See *In re GLK, Inc.,* 921 F.2d 967 (9th Circ.1990); *In re Jehan–Das, Inc.,* 925 F.2d 237 (8th Circ. 1991); *In re Kare Kemical, Inc.,* 935 F.2d 243 (11th Circ.1991). These cases accept as law IRS' mere internal policy of treating Ch. 11 plan payments as "involuntary," even though *U.S. v. Energy Resources* made no such ruling, and even though such payments are made by a debtor under his own voluntary plan in his own voluntary bankruptcy case. And these cases rule that the *only* basis for an allocation order is necessity to success of a reorganization plan, even though *U.S. v. Energy Resources* spoke in much more general terms of the "broad residual authority" of the Bankruptcy Court.

■ The Court of Appeals of this Circuit has read *U.S. v. Energy Resources* broadly, recognizing in that case authority for "the 'traditional understanding' that bankruptcy courts are courts of equity," and pointing out that this "understanding" is now codified in 11 U.S.C. § 105, *In re Richards,* 994 F.2d 763, 765 (10th Circ.1993). Therefore, this Court believes that it has the power to make allocation orders of the type involved herein.

■ Whether it is proper to exercise such power is a different question. There may be occasions in which it is proper to create what would otherwise be a tax-dodger's haven for the sake of some greater good, such as to provide necessary means to facilitate a plan of reorganization. But in this Ch. 7 case, no such overriding necessity appears. The Court concludes that, in the circumstances herein, an allocation order is not proper.

Accordingly, IRS' "Motion to Alter or Amend Court's June 2, 1994 Order of Instruction" is granted, and the "Order Directing Compliance with Previous Order of the Court and Order of Instruction" is hereby vacated, except as to the last paragraph thereof; and in addition, the "Order Approving Allowance of Compensation and Administrative Costs" of August 26, 1993, is modified, so as to strike therefrom the first full paragraph on p. 2, beginning with the word "Additionally ..." and ending with the word "... penalty;" such that IRS is relieved of any obligation imposed on it by this Court in this case to allocate in any particular manner distributions made to it in payment of its claim.

Hogue has asked that sanctions be imposed on IRS' attorney Raymond. This Court is convinced that there was no collusive effort to mislead IRS. Nevertheless, considering all the circumstances herein, Hogue's request that sanctions be imposed on Raymond is denied.

AND IT IS SO ORDERED.